COMMERCIAL ACETYLENE CO. et al. v. AUTOLUX CO. et al.

(Circuit Court, E. D. Wisconsin. May 2, 1910.)

No. 126.

1. PATENTS (§ 328*)—INFRINGEMENT—ACETYLENE GAS TANKS—CONTRIBUTORY INFRINGEMENT.

The Claude & Hess patent, No. 664,383, for an acetylene gas tank, for use on automobiles, etc., covers as the patented package, not only the steel tank containing acetone, but the internal equipment of a supersaturated solution of acetylene gas, which is an essential part of the patented device, and an unlicensed refilling of such tanks after the gas has been exhausted constitutes an infringement, and one who knowingly aids and abets such refilling is a contributory infringer.

[Contributory infringement of patents, see notes to Edison Electric Light Co. v. Peninsular Light, Power & Heat Co., 43 C. C. A. 485; Æolian Co. v. Harry H. Juelg Co., 86 C. C. A. 206.]

2. PATENTS (§§ 256, 259*) — INFRINGEMENT — VIOLATION OF LICENSE RESTRICTIONS—CONTRIBUTORY INFRINGEMENT.

It is within the rights of the owner of a patent for an acetylene gas tank charged with gas for use on automobiles, which with normal use requires recharging after having been used a certain number of hours, by a notice attached to such tanks when sold to prohibit their use except when charged by the seller, and any one who with knowledge of such limited license recharges such tanks, which requires the practice of the invention of the patent, is an infringer of the patent, and one who with such knowledge sells an apparatus used and designed for recharging the same is chargeable as a contributory infringer.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 400–402; Dec. Dig. §§ 256, 259.*]

3. PATENTS (§ 283*)—INFRINGEMENT.

The fact that the manufacturer of a patented device is unable to supply the demand therefor with promptness, and that users are subjected to inconvenience by reason of the delay, furnishes no legal excuse for infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 448; Dec. Dig. § 283.*]

In Equity. Suit by the Commercial Acetylene Company and the Prest-O-Lite Company against the Autolux Company, Percival C. Avery, and others. On motion for preliminary injunction. Motion granted.

This is an application for a preliminary injunction pendente lite restraining the defendants from selling, arranging with, and inducing certain persons to buy certain high-pressure generators with the intent and knowledge and under such circumstances that they will be used for the purpose of filling with acetylene gas certain devices known as gas tanks, which have been manufactured by the Prest-O-Lite Company under certain letters patent and licensed, and sold under these patents with restrictions precluding any sale or use of such tanks when filled with acetylene gas by any one other than said complainant Prest-O-Lite Company, and certain gas tanks which had been formerly manufactured and sold by the Avery Portable Lighting Company, and are now in use in infringement of said letters patent.

The complainant the Commercial Acetylene Company is the owner by assignment of certain letters patent of the United States, numbered, respectively, 664,383 and 727,609, known as the Claude & Hess patents. The complainant Prest-O-Lite Company is the exclusive licensee of said patentee to manu-

facture and sell the device embodied in these letters patent for the purpose of use on automobiles, carriages, and other movable vehicles. The patented article covered by said letters patent consists of a steel cylinder into which acetone is introduced and acetylene gas is forced under pressure, said tank being furnished with an inlet and an outlet valve. Said Prest-O-Lite Company has manufactured and sold under this license contract upward of 150,000 of these devices, which are known to the trade as the "Prest-O-Lite gas tanks." Conspicuous notice is given to the public of these patents. Owing to the nature of the ingredients, great care and skill are required to secure the exact proportion and volume of acetone and acetylene gas which constitute the contents of these packages. A record of the formula for each tank is kept by the Prest-O-Lite Company. The complainant, the Prest-O-Lite Company, has established a uniform practice of giving in exchange for each empty gas tank of their make a recharged standard Prest-O-Lite gas tank, and has established five agencies throughout the country. For the purpose of insisting upon this practice of exchange or recharging, and to protect its customers from badly filled and inefficient tanks, the Prest-O-Lite Company has since its organization sold these devices solely with the intent that they be returned when empty to the Prest-O-Lite Company for exchange, and that they should not be sold or used when filled with acetylene gas by any one other than the patentee or its licensee, the complainants herein. This purpose has always been understood and recognized in the trade, and generally acquiesced in. In order to bring fully to the attention of the users the terms and conditions under which these tanks were sold and exchanged, the Prest-O-Lite Company since the 1st day of June, 1907, has placed upon every one of these devices sold and exchanged a metallic plate on which is engraved the following words:

"The Prest-O-Lite Gas Tank No. (Serial No.)
"The Prest-O-Lite Co.

"New York, Boston, Indianapolis, San Francisco, Toronto.
"Patented Dec. 25, 1900, May 12th, 1903.

"Notice this device is sold and purchased for sale and use only when charged with gas by the undersigned. No license is granted to use or sell this device when charged by any one else and no license is granted to any one else to recharge this device. Any sale or use of this device when sold or used in violation of this condition and limited license will be considered as an infringement of Letters Patent of the United States under which this device is made and sold and all parties so selling and using this device contrary to the terms of this limited license will be treated as infringers of said Letters Patent and render themselves liable to suit for damages and injunction without further notice. This license is good so long as this plate remains upon the device. Any erasure or removal of this plate will be considered a violation of this license. A purchase is an acceptance of these conditions.

"Agents and dealers are not authorized to vary this license.
"The Commercial Acetylene Co.
"The Prest-O-Lite Co."

In addition to this notice of the nature of the rights in these tanks passed by their sale to the purchaser, the Prest-O-Lite Company has attached to each and every of these tanks a paper label containing in large letters substantially the same matter as that placed on the metallic plate.

These conditions were well known to the defendants Avery & Burnham and their associates and the defendant corporation. The defendant Avery was one of the original officers and stockholders in the Prest-O-Lite Company, but severed his relations therewith for the purpose of establishing in the city of Milwaukee under the name and style of the "Avery Portable Lighting Company" an infringing plant for the manufacture and sale of a certain infringing device, and by recharging said licensed device of the Prest-O-Lite Company, and until February 5, 1909, said parties so connected with the Avery Portable Lighting Company were actively engaged in committing these infringing acts, and so continued until enjoined by an order of this court on final hearing from continuing to manufacture and sell the device known as

the Autogas tank, or from committing any other infringing act. About this time Avery and his associates organized a new corporation under the name of the Autolux Manufacturing Company at Milwaukee, for the purpose, as claimed by complainants, of continuing the invasion of the rights of the complainant under the patents aforesaid, and commenced the manufacture of an apparatus known as a "high-pressure generator," which has been extensively used in recharging the Prest-O-Lite gas packages and other gas tanks used on automobiles.

The defendants introduced a large number of affidavits of users of these gas tanks, showing that the demand has been so great that complainants could not supply the trade with charged tanks, and that great inconvenience had resulted to users who were obliged to send their exhausted tanks to Indianapolis in order to secure recharged tanks; that the high-pressure generators had proved a blessing to the users of Prest-O-Lite tanks because it enabled them to secure a prompt exchange of depleted tanks at home, etc.

Eleven such high-pressure generators have been sold by defendants and installed in populous cities, where they have been used to fill the gas tanks of the Prest-O-Lite Company and others.

Ferdinand A. Geiger, Keyes Winter, and John P. Bartlett, for complainants.

George Wilkinson and Marshutz & Burnham, for defendants.

QUARLES, District Judge (after stating the facts as above). The showing made by complainants on this application on its face presents two distinct legal aspects. The first rests on the patent alone for all necessary recharging of the Prest-O-Lite gas tank during the life of the patent; that any unlicensed person who charges such a tank with a supersaturated solution of acetylene gas for use or sale is an infringer, and that whoever advises, aids, or abets such tort is a contributory infringer; that no restriction by the patentee is necessary to re-enforce the sanction of the patent. Second. The conditions imposed by the patentee forbidding any one aside from the patentee from recharging the gas tanks are set up and insisted upon. The principle of law relied upon is that the patentee may withhold his device from the public entirely if he so elects, and therefore may impose such restrictions upon use or sale of the patented package as he may choose; that the purchaser or user who knows of such restriction is bound to comply therewith. To knowingly violate them is a tort, and whoever advises, abets, or aids in such violation is a joint tort-feasor. The contention of complainant is that defendants are guilty under either phase of the law. It may be well to consider these two propositions separately.

To clarify the first proposition, we must have in mind what the device is that is protected by the Claude & Hess patent. All along through the showing of defendants the idea crops out that one who has bought a patented gas tank owns the same absolutely, and may have the same recharged when and where he will; that is to say, that the legal effect of such purchase is to release the device from the monopoly. Now, if the empty steel shell with its two valves be the physical embodiment of the patent, this contention would be entitled to consideration. A reference to the language of the Claude & Hess patents and to their history in the Patent Office, and the construction placed upon them by this court in 166 Fed. 907, should suffice to si-

lence this contention. The "package," which is the patented product, consists not only of the steel tank, but of the internal equipment of a supersaturated solution of acetylene gas which is recognized as an essential part of the package. A long bitter fight was waged in the Patent Office on this very point, and the final conclusion was that the gaseous solution bore the same relation to the outer shell as the column of mercury bears to the glass stem and bulb of a thermometer. Indeed, it was conceded by the officials of the Patent Office that there was nothing patentable about the steel cylinder with two valves. Each element, as well as the combination, was old. Therefore it is obvious that the exhausted steel cylinder is not the physical embodiment of the patent, and has not been released from the monopoly, but in the natural order of things requires the renewal of the vital elements of the patent. This operation calls for the teachings of the patent the same care, skill, and inventive thought that are called into requisition when the tank received its initial charge. It follows, therefore, that whoever undertakes to recharge this tank for use or sale is practicing the invention to all intents and purposes, and is invading the monopoly. That this illicit business has grown to large proportions is convincingly shown by the affidavits submitted on both sides, and was established by the record in the suit of the present complainants against the Avery Portable Lighting Company. There can be little doubt from the facts here submitted that the high-pressure generator of the defendants has been extensively employed in filling Prest-O-Lite tanks, with the knowledge and consent of the defendants; that such generators, 11 in number, have been established in the large cities of the country for the purpose of facilitating this illicit business. This is attested by the clamorous chorus of auto users who furnish affidavits here for the defendants, singing the praises of the defendants' generator as a panacea for all their troubles. Seventeen of these deponents admit being owners or users of one or more of the Prest-O-Lite tanks. The clear inference from the defendants' affidavits is that, in the absence of the high-pressure generator, these Prest-O-Lite tanks could not and would not have been recharged, except through the agencies provided by the complainants. We shall see, when we come to discuss the law, that the defendants are contributory infringers under the first hypothesis.

The second proposition involves the legal efficacy of the conditions imposed by the patentee prohibiting use or sale of any such tank recharged by any other than the patentee. There would seem to be abundant reason why complainants should insist upon this condition that is stamped on every tank conspicuously and brought to the attention of every user. It is dealing with a combination of chemical elements of high explosive nature calling for great care, skill, and experience to insure safety and efficiency in operation. The reputation of complainants is at stake on every one of its tanks that goes out to the public bearing its name. Such reputation is bound to suffer when one of its tanks explodes, or falls below the standard of efficiency. But, whether reasonable or unreasonable, the authorities seem to recognize the right of the patentee to insist upon a restriction of this kind, no one being bound to purchase or use the patented article if un-

willing to abide by the conditions. No case exactly in point can be found, indeed, no such case has heretofore arisen, presenting the peculiar facts which make this a case of first instance. Numerous cases are cited where the patentee by a condition has insisted upon bringing within the monopoly some article or substance not covered by the patent. Such was Dick v. Milwaukee Office Specialty Co., 168 Fed. 930. See, also, the following cases cited by complainant's counsel: Tubular Rivet Co. v. O'Brien, 93 Fed. 200; Æolian Co. v. Juelg Co., 155 Fed. 119, 86 C. C. A. 205; Rupp & Wittgenfeld Co. v. Elliott, 131 Fed. 730, 65 C. C. A. 544.

The distinguishing feature of the instant case is that the patentee by condition merely insists upon the exclusive right to practice the invention, to control the elements that constitute the soul of the invention. The so-called condition is not broader than the prohibition of the patent. Viewed from any standpoint, the requirement of the so-called condition is entitled to respect and obedience at the hands of every person having knowledge of such restrictions. In some way the patentee must have protection; otherwise it would result that the monopoly would practically expire with the exhaustion of the first charge of acetylene. At the end of 34 hours of steady burning when the first installment of power has given out, any interloper may gain possession of the tank, and practice the invention with impunity. This would work a mockery of the entire patent, and set at naught the patent laws which assume to grant a complete monopoly for 17 years. This case is sui generis, not to be confused with the case of a patented device which passes to the user completely equipped, calculated to discharge for an unlimited period of time a given function, until it breaks down or wears out. In the case of the gas tank it is within the contemplation of the parties, and inheres in the very nature of things, that within a short time, a matter of weeks or months, the package will become exhausted, and a recurrence to the teachings of the patent will be necessary to invigorate the tank for another period of usefulness. (One of the gods of mythology was so constituted that at fixed periods he was obliged to recline on the earth from which he drew his supernatural power.) The very theory of the patent is that each tank must oscillate between the vehicle upon which it serves to the charging plant upon which it depends. Thus the doctrine of repair, so urgently pressed upon us, is not applicable. There is no breakdown here. The return of the exhausted tank is not accidental, but normal, and whoever knowingly interferes with this process invades the monopoly. The attempt to bring this case within the doctrine of repair because complainants take tribute in advance is not entitled to serious consideration. The government has left the matter of tribute entirely to the patentee and the public with whom he must deal. In the case of an ordinary sale of a machine the patentee collects his entire tribute when the sale is made. He expects nothing more, as the transaction is complete.

It is said that the condition is matter of contract, and binds only the purchaser who assents to the same. On the other hand, the theory is advanced that the condition stamped on the tank is like a covenant that runs with the land. Neither proposition is exact. The covenant

runs with the land whether the later grantee has notice thereof or not; the record furnishing constructive notice. Here it is purely a question of notice. Any person having actual notice that such restrictions have been imposed is bound to observe them. In Bement v. National Harrow Co., 186 U. S. 70, 91, 22 Sup. Ct. 747, 755, 46 L. Ed. 1058, the court say:

"The very object of these laws is monopoly, and the rule is, with few exceptions, that any conditions which are not in their very nature illegal with regard to this kind of property imposed by the patentee and agreed to by the licensee for the right to manufacture and use or sell the article will be upheld by the courts. The fact that the conditions in the contracts keep up the monopoly or fix prices does not render them illegal."

That defendants have encouraged a wholesale violation of such reasonable condition and have furnished machinery to facilitate such violation is established to my entire satisfaction. But defendants insist that defendants are three removes from the user who oversteps his legal rights, and therefore they are not technically contributory infringers. An infringement is a tort, and it is a fixed principle in the law of torts that all who engage in its consummation are joint tortfeasors. There is no magic in the term contributory infringers which will avail the defendants. The following cases cited by complainants' counsel fairly indicate the lines of contributory infringement. Judge Seaman in Dick v. Milwaukee Office Specialty Supply Co., 168 Fed. 930, approves and adopts the definition and reasoning of Judge Ray in a case with the same title found in 149 Fed. 427, where the court say:

"That such license restrictions are lawful, good, valid, and binding in the case of patented machines and articles has been established by a long line of decisions. Also that one who knowingly and directly aids, abets, and procures a violation of such license restriction is a contributory infringer of the patent."

This legal doctrine is fortified by several later cases cited by complainants' attorneys.

In Crown Cork & Seal Co. v. Standard Brewery, 174 Fed. 252, 259, the court say:

"If the defendants knowingly contribute to infringement of a patent by aiding a use beyond the limits of the license made by the patentee, [they are contributory infringers]."

See, also, Goodyear Shoe Machinery Co. v. Jackson, 112 Fed. 146, 50 C. C. A. 159, 55 L. R. A. 692, cited by defendants.

The voluminous showing presented by the defendants consists mostly of a large number of affidavits from dealers and users of gas tanks used upon automobiles, describing the enormous demand for these articles growing out of the phenominal expansion of the automobile business, the utter inability of the complainants to supply sufficient tanks to meet this growing demand, and the great inconvenience of users who needed to have their tanks recharged promptly and were obliged to send their exhausted tanks a long distance to reach any charging plant maintained by complainants; that the installation of the Autolux generator of defendants was a great blessing, as it en-

abled such recharging to be expeditiously done at home. It is difficult to see how this showing furnishes any legal footing for the defendants. It would rather seem to emphasize and give color to the complainants' contention in two ways: First. Because it depicts in strong light the wonderful commercial opportunity and temptation for one who is willing to break into the field and appropriate this business of recharging complainants' gas tank. Consumers were willing and eager to pay the price. Defendants were equal to the situation, and proceeded under some early patents to construct a generator that would answer the purpose, and located them in populous centers where complainants had no recharging plant. This laid bare the secret spring that brought the high-pressure generator into existence, and accounted for their rapid distribution. It was a commercial enterprise promising large profits, if the business of recharging these tanks of complainants could be diverted and maintained. It satisfactorily appears that defendants well knew that an invasion of the monopoly of complainants was involved, and that they were anxious in their contracts for purchasers to assume responsibility for legal consequences. These matters were all talked over with the purchasers of the generators, which were in nearly every instance connected in some way with the auto business and were entirely familiar with the methods pursued by the complainants in licensing their tanks, and the conditions that were imposed upon every purchaser, and all appear willing, under the advice of defendants, to take the chances of litigation. Second. Such showing of affidavits gathered by defendants betrays the fact that such generators of defendants are being generally and regularly used to fill the Prest-O-Lite tanks. The fact that complainants were unable to furnish sufficient charged tanks to meet the demands of the public furnishes no legal excuse for the wholesale infringement. A similar excuse was presented in Crown Cork & Seal Company v. Standard Brewery, 174 Fed. 253, 257, and was summarily brushed aside by the court.

I am constrained to hold that the high-pressure generator of defendants was built and sold to enable certain reliable men to secure this illicit business of recharging the Prest-O-Lite tanks, the profit of such enterprise to be shared by the defendants. Trade conditions were peculiar, but trade conditions did not change the law nor the rights conferred by the government upon the patentee. The complainants are entitled to injunctive relief so far as may be necessary to protect and enforce the restrictions imposed upon the sale or use of tanks filled by any other than the patentee. The use or sale of the high-pressure generator for the purpose of recharging Prest-O-Lite tanks with acetylene gas must be prohibited. I am inclined to include the auto gas tank. They have been adjudicated as infringing devices, and so remain unless their status was changed by negotiation and adjustment of the parties which wound up the litigation between the complainants and the Avery Portable Lighting Company. The complainants' attorneys will prepare an injunctional order and submit the same to the defendants. The court will hear the parties as to the framework of the order.