COMMERCIAL ACETYLENE CO. et al. v. SEARCHLIGHT GAS CO. et al.

(Circuit Court, N. D. Illinois, E. D.    April 25, 1911.)

No. 30,301.

**1. Patents (§ 132\*)—Term—Limitation by Foreign Patent.**

In determining whether the invention of a United States patentee was previously patented in a foreign country within the meaning of Rev. St. § 4887 (U. S. Comp. St. 1901, p. 3382), so that its term is limited by such foreign patent, the court must look through the mere form of phraseology and determine what was the essence of the invention laid open to the public by the foreign patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 188½–191; Dec. Dig. § 132.\*]

**2. Patents (§ 328\*)—Term—Foreign Patent—Acetylene Tanks.**

The Claude and Hess patent, No. 664,383, for an improvement in apparatus for storing and distributing acetylene gas, is limited as to term by the British patent No. 29,750 of 1896, granted to the same inventors for an improved method of storing acetylene for lighting and other purposes, and which expired by limitation June 30, 1910.

In Equity. Suit by the Commercial Acetylene Company and the Prest-O-Lite Company against the Searchlight Gas Company and others. On motion for preliminary injunction. Motion denied.

Matthew Mills, Elmer D. Brothers, John P. Bartlett, Clarence Winter, and Keyes Winter, for complainants.

Robert H. Parkinson (John S. Miller and Merritt Starr, of counsel), for defendants.

George A. Miller and W. K. McIntosh, for certain defendants.

KOHLSAAT, Circuit Judge. Complainants have filed their bill herein to restrain infringement of claims 1, 2, and 5 of patent No. 664,383, granted to Claude and Hess on December 25, 1900, upon application filed March 1, 1897, for improvement in apparatus for storing and distributing acetylene gas. The cause is now before the court on motion for a preliminary injunction. The patent, as well as the infringement thereof here involved, were adjudicated by Judge Quarles on January 13, 1909, in Commercial Acetylene Company v. Avery Portable Lighting Company (C. C.) 166 Fed. 907, in favor of the present complainant. That decision is broad enough to bind the defendant herein upon all the questions now involved save one. British letters patent No. 29,750, issued to said Claude and Hess, upon application filed June 30, 1896, which patent expired under the English law in 14 years, or on June 30, 1910, provided all requirements were observed. As a matter of fact, so defendant asserts, the English patent expired on June 30, 1900, by reason of patentee's failure to comply with the requirements of the laws of Great Britain.

Assuming the fact to be that at the date of the prior adjudication the English patent was still in force, it is apparent that the questions here presented would not have been pertinent. They were neither present nor considered, and are now presented for the first time. This suit was instituted on February 1, 1911, or more than seven months after the expiration of the British patent. By the terms of section 4887 of the Revised Statutes (U. S. Comp. St. 1901, p. 3382), it is provided that where a patentee has caused his invention to be first patented in a foreign country and afterwards takes out an American patent on the same subject-matter, the American patent shall be so limited as to expire at the same time with the foreign patent. The several amendments to the act have no bearing upon the present litigation. Thus, if it appears that the subject-matter of the claims in suit is substantially the same as that involved in the British patent, then the claims in suit constituted no cause of action at the time the suit was instituted, and this suit could not be maintained.

The three claims here involved read as follows:

"(1) A closed vessel containing a supersaturated solution of acetylene produced by forcing acetylene into a solvent under pressure, said vessel having an outlet for the acetylene gas which escapes from the solvent when the pressure is released or reduced, and means for controlling said outlet whereby the gas may escape therethrough at substantially uniform pressure, substantially as described.

"(2) A prepared package consisting of a tight shell or vessel; a solvent of acetylene contained within said vessel; and acetylene dissolved in and held by said solvent under pressure and constituting therewith a supersaturated solution, the package being provided at a point above the solvent with a reducing-valve, substantially as and for the purpose set forth."

"(5) As a new article of manufacture, a gas-package comprising a holder or tight vessel; a contained charge of acetone; a, volume or body of gas

dissolved by and compressed and contained within the solvent; and a reducing-valve applied to an opening extending to the interior of the holder above the level of the solvent, substantially as set forth."

The court in Acetylene Company v. Avery Portable Lighting Co., supra, held that the means for maintaining uniform pressure of claim 1, the reducing valves of the claims 2 and 5, together with the outlets in said claims severally described, found their equivalent in the needle valve of defendants in that case. The valve here involved is likewise a needle valve.

Complainant no longer employs the reducing valve shown in the drawings. It is defendants' contention that the subject-matter of the British patent is substantially that of the patent in suit. It will be noticed that the British patent calls for "an improved method of storing acetylene for lighting and other purposes," while that in suit is entitled, "Improvement in apparatus for storing and distributing acetylene gas." The court held in the case above cited that "Claude and Hess were the first to discover a practical and safe method of storing and transporting" acetylene and acetone, although the claims in suit called for an apparatus; i. e., a "closed vessel," "a prepared package consisting of a tight shell or vessel," and "a gas package comprising a holder or tight vessel." The claims are for a combination, one element of which is a supersaturated solution caused by forcing acetylene into acetone or other solvent under pressure. This was suggested by the board of examiners. In summing up the invention, the court, in the case above cited, says:

"By equipping the gas package with acetone as a solvent, they (Claude and Hess) have enormously increased the storing capacity of the tank, rendering it possible to store under moderate pressure 300 times as much acetylene gas as would otherwise be compressed therein; second, they have disclosed the chemical changes that take place in both gas and liquid when so combined, which render both innocuous and capable of safe transportation. These two features of the discovery clearly entitle the inventor to protection. * * * "

Both of these accomplishments, it will be seen, go to the use of acetylene and acetone under pressure. It does not appear from the record that the British so-called method patent was ever called to the attention of the court. It discloses very specifically, the method of storing acetylene by compression in connection with certain liquids, particularly acetones. It follows that at the time this suit was brought this method of reducing acetylene to a greatly reduced volume for purposes of storage, transportation, and utilization was public property, but it might still, although public, become an element of a valid combination patent, so that, in order to hold that the patent in suit expired with the British patent, it must appear for the purposes of this hearing that the latter disclosed the combination. Claims 6 and 7 of the Brtish patent read as follows, viz.:

"The employment of a receiver containing a liquid charged with acetylene under pressure and from which the acetylene is evolved when required for use as specified.

"The herein described method of storing acetylene gas in a small volume for lighting or other purposes, which consists in dissolving the acetylene gas under pressure in a suitable liquid solvent such as described from which it can be evolved when required for use."

It will be seen that, while ostensibly describing a method, these claims describe the device of the patent in suit as construed by the Wisconsin court.

[1] In determining the meaning of the word "patented" in section 4887, the courts have not confined themselves to its narrow sense as applying to what is specifically covered by the claims. Such a construction would manifestly lead to absurdity; for, if nothing less than a literal copy of the foreign patent could be held the same invention, it would not be difficult for the skillful patent solicitor to defeat the intent of the statute by mere colorable changes in the specification and claims. It is very clear that the court must look through mere form and phraseology and determine what was the essence of the invention laid open to the public by the foreign patent, and base its decision upon matters of substance rather than those of form. Commercial Mfg. Co. v. Fairbank Co., 135 U. S. 176, 10 Sup. Ct. 718, 34 L. Ed. 88; Siemen v. Sellers, 123 U. S. 276, 8 Sup. Ct. 117, 31 L. Ed. 153; Western Electric Co. v. Citizens' Telephone Co. (C. C.) 106 Fed. 215; Electric Accumulator Co. v. Julien Electric Co. (C. C.) 38 Fed. 117, 143; Sawyer Spindle Co. v. Carpenter (C. C.) 133 Fed. 238, 240, 241, and 143 Fed. 976, 75 C. C. A. 162; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121.

[2] The patentees conceded before the officials of the Patent Office that the closed vessel with its two valves and containing acetylene gas involved no patentability, and it was only by the use of the acetylene gas in connection with the acetone, both under pressure, that a patent was granted. Therefore there is no patentable novelty in the form of receiver or closed vessel alone. When, therefore, the British patent calls for the employment of a receiver containing a liquid charged with acetylene under pressure and from which the acetylene is evolved when required for use as specified, it must be held to have contemplated the common forms of receiver, among which is that of the patent in suit, or the one used by the parties hereto, thus disclosing every step in the claims in suit. With this construction the specification is in full accord. It reads in part as follows:

"With a pressure of about equal to that used in a soda-water syphon, we are able to store a considerable volume of acetylene in a receiver of relatively small dimensions. With a liquid dissolving m times its volume of acetylene, we can thus store at equal pressure about m times more gas than if it were simply compressed without being dissolved in a liquid which is the principle of our invention.

"When gas is withdrawn from a receiver containing a solution of acetylene under pressure, the pressure necessarily falls constantly, and to obtain a regular supply of gas we provide the vessel with a pressure regulator. The process may be carried out as follows, for instance, although subject to modifications.

"The acetylene is dissolved in the liquid chosen, for instance by the means ordinarily employed in making soda-water, the solution of the gas being facilitated by agitation under pressure in contact with the liquid. The solution under pressure, however obtained, is filled into a receiver of metal or of glass (such as used for soda-water) capable of resisting the pressure employed. The receiver has a cock and the necessary adjuncts for connection directly or through an expansion chamber, with the appliances in which the

gas is used by the consumer, the substitution of charged for empty receivers being readily effected.

"The storage receivers may vary in dimensions from a small portable, to a large fixed, gas-holder."

As the record now stands, the receiver or package is nothing more than a mere receptacle with a needle valve outlet regulation, one of the commonest trade means of storing an article for transportation. It is difficult to understand how, given the liquid acetylene as an article free to all, its monopoly can be further prolonged by claiming it in combination with an ordinary tank or other receptacle for transportation as a combination patent. Had the two patents been granted in this country, there would seem to be little doubt but that the patent in suit, under the present record, must be held void, under the rule laid down in cases of double patenting. It is therefore held for the purposes of this hearing that the patent in suit expired on June 30, 1910, with the English patent.

The motion for an injunction in limine is therefore denied.