### ACME ACETYLENE APPLIANCE CO. et al. v. COMMERCIAL ACETYLENE CO. et al.

(Circuit Court of Appeals, Sixth Circuit. December 5, 1911.)

No. 2,214.

1. APPEAL AND ERROR (§ 954*)—REVIEW—ORDER GRANTING PRELIMINARY INJUNCTION—DISCRETION OF COURT.

On review of an order granting a preliminary injunction, the fact must be recognized that the court making the order had a reasonable discretion to either grant or withhold it, and unless it explicitly appears that such court proceeded upon an erroneous hypothesis of pertinent fact or law or improvidently exercised its legal discretion the order will not be disturbed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3818–3821; Dec. Dig. § 954.*

Review of interlocutory decree granting or refusing injunction in patent case, in Circuit Court of Appeals, see notes to Gill & Fisher v. Browne, 36 C. C. A. 672; Southern Pac. Co. v. Earl, 27 C. C. A. 189; New York, N. H. & H. R. Co. v. Sayles, 32 C. C. A. 484.]

2. PATENTS (§ 297*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION—EFFECT OF PRIOR ADJUDICATION.

When a patent has been sustained on final hearing in a contested case, its validity should be assumed on a motion for a preliminary injunction in another court in the same or another circuit.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 481–488; Dec. Dig. § 297.*]

3. PATENTS (§ 107*)—VALIDITY—ABANDONMENT—METHOD AND APPARATUS APPLICATIONS.

A method and an apparatus for practicing such method are distinct things, and may be the subjects of separate inventions and covered by separate patents, and where separate applications are made for each by the same inventor his withdrawal or abandonment of one does not affect the validity of a patent granted for the other.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 150; Dec. Dig. § 107.*

Abandonment of invention, see note to Hayes-Young Tie Plate Co. v. St. Louis Transit Co., 70 C. C. A. 6.]

4. PATENTS (§ 328*)—TERM—FOREIGN PATENT—ACETYLENE GAS TANKS.

The Claude and Hess patent, No. 664,383, for an apparatus for storing and distributing acetylene gas is not limited as to term by the British patent No. 29,750 of 1896, under Rev. St. § 4887 (U. S. Comp. St. 1901,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

192 F.—21

p. 3382), the foreign patent being for a method, and the two not for the same invention.

**5. PATENTS (§ 328*)— SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.**
    Findings of infringement and contributory infringement of the Claude and Hess patent, No. 664,383, for an apparatus for storing and distributing acetylene gas, made on a motion for a preliminary injunction, affirmed.

    [Ed. Note.—Contributory infringement of patents, see notes to Edison Electric L. Co. v. Peninsular Light, P. & H. Co., 43 C. C. A. 485; Æolian Co. v. Harry H. Juelg Co., 86 C. C. A. 206.]

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

Suit in equity by the Commercial Acetylene Company and the Prest-O-Lite Company against the Acme Acetylene Appliance Company, Arthur S. Widrig, Robert Widrig, and Fred Wilmot. From an order (188 Fed. 89) granting a preliminary injunction, defendants appeal. Affirmed.

This is an appeal from an order (188 Fed. 89) granting a preliminary injunction. Appellants are restrained from selling certain devices called acetylene gas generators and compressors for use in recharging with acetylene gas certain other devices called Prest-O-Lite gas tanks or Autogas tanks, from infringing United States letters patent No. 664,383, and from inducing others so to infringe such letters patent or to contribute thereto. These letters patent were granted December 25, 1900, to Claude & Hess, and through mesne assignments appellee, the Commercial Acetylene Company, acquired title to the patent; and the other appellee, the Prest-O-Lite Company, through agreement with its coappellee, became the exclusive licensee in the United States and territories to manufacture and sell apparatus (employing and containing the invention covered by the letters patent mentioned) for use on automobiles, carriages, and other vehicles. One complaint made against appellants is that in March, 1911, the two Widrigs and Wilmot organized the corporation, the Acme Acetylene Appliance Company, and commenced the manufacture of a machine described as an "Acetylene Gas Generator and Compressor," and caused it to be used for the purpose of generating acetylene and compressing the same in Prest-O-Lite and Autogas tanks, and for forming therein a supersaturated solution of acetylene as set forth in claims 1, 2, and 5 of the letters patent in suit. A suit was begun by appellees in November, 1909, in the court below against one of the appellants, viz., Arthur S. Widrig, and one Robinson, in which upon motion and hearing an order was issued (June 9, 1910), enjoining Widrig and Robinson pendente lite from filling or refilling or causing to be refilled with acetylene any Prest-O-Lite gas tanks; and it is now charged that the sole purpose of organizing the appellant corporation was to avoid the operation of the injunction issued in that case, and that the individual appellants have been actively engaged in managing the company's affairs and business. An appeal was taken in that case from the order granting the preliminary injunction, but it was dismissed by the appellants in the case when called for argument in this court.

April 20, 1911, appellants in the present case filed an answer admitting the organization of the appellant company, the manufacture and sale by the Prest-O-Lite Company of the gas tanks bearing its name; also that the Prest-O-Lite tanks and Autogas tanks through use become exhausted and depleted of acetylene, that appellees brought the suit against Widrig and Robinson alleging the filling, selling, and exchange of Prest-O-Lite tanks and infringement of the patent in suit, that an injunction pendente lite was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

issued by Judge Denison restraining Widrig and Robinson, and that Robert Widrig is managing the affairs of the appellant company.

The answer denies the other averments of the bill, including validity of the patent in suit or its infringement, and avers anticipation through a number of domestic and foreign patents and publications named. It also alleges that on June 30, 1896, "there was granted to Claude & Hess letters patent No. 29,750, by the Kingdom of Great Britain, which said letters patent covered the same alleged invention as is shown in letters patent of United States No. 664,383 and that by the laws of the Kingdom of Great Britain the life of said patent was 14 years from date of issue, and that by reason of section 4887 of the Revised Statutes of United States before amendment by Act March 3, 1897, c. 391, 29 Stat. 692 (U. S. Comp. St. 1901, p. 3382), the term of said letters patent No. 664,383 expired June 30, 1910."

It is further averred that, by reason of the failure of Claude & Hess to comply with the laws of Great Britain, their letters patent expired June 30, 1900, and that letters patent No. 664,383 having been issued December 25, 1900, upon an application filed March 1, 1897, are null and void.

The order granting the preliminary injunction required a bond in the penal sum of $10,000 to be filed, and imposed as a condition that if it be finally determined either that the patent sued upon is invalid, or that defendants were not acting in infringement of it, the complainants should pay to defendants $5,000 as liquidated damages caused by the issuing of the injunction, and also such further damages in excess of $5,000 as may be assessed by the court in favor of defendants, "both liquidated and assessed excess, to be subject to be ordered to be paid in the final decree in this cause, or by proceedings herein at the foot of the decree."

Robert H. Parkinson (Robert M. Calfee and Joe G. Fogg, on the brief), for appellants.

Keyes Winter and John P. Bartlett (Clarence Winter, on the brief), for appellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). [1] In testing the validity of an order granting a preliminary injunction, we are bound to recognize that there resided in the court making the order a reasonable discretion either to grant or to withhold it. And the general rule is that unless it explicitly appears that the court has proceeded upon an erroneous hypothesis of pertinent fact or law, or has improvidently exercised its legal discretion, the order will not be disturbed. This court has so frequently expressed the rule in this behalf that we need not do more than to cite one or two of the recent decisions, in which reference will be found to the earlier cases. Interurban Ry. & T. Co. v. Westinghouse E. & Mfg. Co., 186 Fed. 166, 170, 108 C. C. A. 298; City of Shelbyville, Ky., v. Glover, 184 Fed. 234, 238, 106 C. C. A. 376. We may say with respect to the present case that this rule requires us to pass upon any question of law, the determination of which was necessarily involved in the granting of the order. Bissell Carpet Sweeper Co. v. Goshen Sweeper Co., 72 Fed. 545, 19 C. C. A. 25 (C. C. A. 6th Cir.)

Before the order was granted, the validity of the patent in suit had been adjudicated upon final hearing in Commercial Acetylene Co. v. Avery Portable L. Co. (C. C.) 166 Fed. 907. The same court, upon a motion for a preliminary injunction, had occasion again to pass upon the patent in suit in Commercial Acetylene Co. v. Auto-

lux Co. (C. C.) 181. Fed. 387.. Moreover, the suit of the present appellees against Widrig and Robinson, mentioned in the statement, was based upon the patent now in suit, and the preliminary injunction there allowed was granted by, the judge who made the order in this case.

It is urged in respect of the decision of Judge Quarles in Commercial Acetylene Co. v. Avery Portable L. Co., that he treated the patent in suit as a method patent and not as an apparatus patent; and consequently that it was not an adjudication upon which the order now in dispute could rightly be based.

The strength of this contention is to be tried by a consideration of the opinion as a whole, and not by particular words or sentences or by a paragraph apart from their context. It appears in the opening paragraph of the opinion ([C. C.] 166 Fed. 908) that Judge Quarles was fully cognizant of the fact that Claude & Hess "had pending at the same time two distinct applications, one for the method or process * * * and the other for the apparatus or package. * * *" For reasons there stated, he did not feel at liberty "to consider the proceedings in the Patent Office touching the method application, or the claimed abandonment predicated thereon," and treated the evidence as failing to show "what became of the process application, except that no patent was granted thereon." (C. C.) 166 Fed. 909. It would seem strange, then, that the learned judge understood that he was passing upon a method patent. We may derive further assistance from portions of the language used, which we think are fairly indicative alike of context and trend of the opinion as an entirety. For instance, the court stated ([C. C.] 166 Fed. 909) that the primary difficulty in the Patent Office "seems to have been to what extent the solvent supersaturated with gas might be considered an element of the combination in the apparatus patent." Again ([C. C.] 166 Fed. 909, 910):

"It was finally held on appeal that, as an apparatus for storing and distributing acetylene gas. the solvent, with supersaturated solution of acetylene, might constitute an element of the combination, and a claim was suggested by the board, which is claim 1 of the patent in suit."

Of the things accomplished by the inventors, it is said ([C. C.] 166 Fed. 912):

"First: By equipping the gas package with acetone as a solvent, they have enormously increased the storing capacity of the tank," etc.

When these quoted portions are construed in connection with what is said later of the pith of the invention ([C. C.] 166 Fed. 916), it is plain that there is no such inconsistency as to warrant the conclusion that the court determined the validity of the patent in suit upon the theory that it was a method patent; on the contrary, as we interpret the opinion, the court considered the patent as a combination of elements and so treated the invention patented as an apparatus patent. This was the conclusion reached by the court below. And Judge Quarles himself in unmistakable terms made his conception of the patent clear, in the later case of Commercial Acetylene Co. v. Autolux Co., supra (C. C.) 181 Fed. at page 390 where he said:

"The 'package,' which is the patented product, consists not only of the steel tank, but of the internal equipment of a supersaturated solution of acetylene gas which is recognized as an essential part of the package."

So far then as validity of the patent in suit upon its merits and scope is concerned, the decision in Commercial Acetylene Co. v. Avery Portable L. Co., supra, was in itself a proper basis upon which to rest the preliminary injunction in the present case, not to speak of the case against Widrig and Robinson; and the action of the court in the present case was none the less considerate because of the familiarity the learned judge had necessarily acquired of the patent through the action taken in the Widrig and Robinson Case.

[2] Independently of this latter fact, however, the rule as to prior adjudication is settled. As Judge Severens said in Interurban Ry. & T. Co. v. Westinghouse E. & Mfg. Co. (C. C. A. 6th Cir.) 186 Fed. at page 170, 108 C. C. A. at page 302:

"And when there has been a prior adjudication sustaining a patent and the infringement thereof in the same or another circuit, where the validity of the patent has been contested upon full proofs, the Circuit Court should, upon a motion for preliminary injunction, sustain the patent, and leave the determination of the question of its validity to be determined upon the final hearing."

To the same effect is Leeds & Catlin v. Victor Talking Mach. Co., 213 U. S. 301, 312, 29 Sup. Ct. 495, 53 L. Ed. 805.

It is to be observed that Judge Denison had this rule in mind when making the order in dispute; for in the opening of his opinion he said (Commercial Acetylene Co. v. Acme Acetylene Appliance Co. [C. C.] 188 Fed. 90):

"Under the settled rules which govern such motions and giving due force to the previous decisions upon this patent, this motion should be granted, unless the new evidence now presented by defendants is so forceful as to indicate that it would have defeated complainant if it had been presented in the former hearings."

[3] This brings us to a consideration of the two, and the only two, questions that we regard as important to a right disposition of the present appeal. Claude & Hess filed two applications at the same time in the United States Patent Office; one for a method patent and the other for an apparatus patent—the patent in suit. The application for the method patent was rejected and abandoned. It was contended in the court below and is here, that the abandonment of the method application in practical effect operated, despite the fact that the other application was granted by the patent office, also to abandon the apparatus application. Judge Denison said of the two applications (C. C.) 188 Fed. 90:

"They were complementary to each other. The inventions were correlative. One sought to patent an apparatus which employed the method, and the other sought to patent the method which employed the apparatus."

And after stating, "It is now urged that thereby the main idea, the 'soul of the invention,' was abandoned to the public," he proceeded (ibid):

"I do not so understand the rule. The two things, method and apparatus, are distinct inventions. They may be patented by separate patents. The

apparatus applicant may apply for the method, or he may not, as he chooses. If he applies for both in separate applications, he may change his mind, and withdraw or abandon either without affecting the other. The doctrine of the cases upon which defendants rely is that acquiescence in the rejection of a claim and acceptance of a grant with other claims estop the grantee from construing the grant as if it contained the claim rejected. This doctrine cannot apply to negotiations which did not mature into the grant of anything. The references and arguments which had more or less effect in inducing the abandonment are now important, not as an estoppel, but only on their merits; and on their merits they have been considered in the former decisions."

So far as the abandonment of the method application and any effect that such abandonment could have upon the apparatus application and patent are concerned, the statement of law just quoted is so manifestly sound and so in accord with principles laid down in the Leeds & Catlin Case (213 U. S. 301, 318, 29 Sup. Ct. 495, 53 L. Ed. 805), that the contention made in respect of abandonment may safely be passed without further notice.

[4] The only other new issue that was presented in the present suit is one in relation to the Claude & Hess patent obtained in Great Britain prior to the date of the patent in suit. The insistence is that this British patent embodied the patent in suit; and that under section 4887 of the United States Revised Statutes, the term of the patent in suit ended with the expiration of the British patent, which occurred prior to the commencement of the present suit. This issue was not presented in either Commercial Acetylene Co. v. Portable L. Co., supra (C. C.) 166 Fed. 907, or Commercial Acetylene Co. v. Autolux Co., supra (C. C.) 181 Fed. 387. Nor was this issue tendered in the case of the present appellees against Widrig and Robinson, supra. It was made and passed upon, however, in the recent case of Commercial Acetylene Co. v. Searchlight Gas Co. (C. C.) 188 Fed. 85, 89. It was there held that the term of the Claude & Hess United States patent expired (June 30, 1910) with that of the English patent. The hearing in that case, like the one in the present case, was had under motion for a preliminary injunction.

Is the term of the patent in suit affected by the fact that the term of the British patent has expired? The answer to this must depend upon the nature of the British patent. We are constrained to believe that it was a method patent. It is worthy of notice that at the very opening of what is called (1) the "provisional specification" and also (2) the "complete specification," this appears: "An improved method of storing acetylene for lighting and other purposes." True, provision is made in the specification and in claim 6 for a receiver. However, the main strength of all the language employed in the instrument is to describe and claim a *method;* and since the constituents of the method embraced acetylene and a solvent, it is obvious that some sort of receptacle for the product was necessary. The impression created by a study of the specification and claims is that the product is the main thing and the receiver a mere incident. In all of the seven claims declared at the end of the complete specification, mixtures or combinations, comprising acetylene gas with liquids, and also groups of substances belonging to the "fatty series," the "aromatic series"

and the "higher series," as solvents, are specified or referred to as constituting the process invented, while in only one of these claims is any mention made of a receiver; it is in claim 6 and is as follows:

"The employment of a receiver containing a liquid charged with acetylene under pressure and from which the acetylene is evolved when required for use as specified."

In the first claim "the utilization for the purpose of storage, in a small volume, of large quantities of acetylene gas, of the solubility of said gas in certain liquids," etc., is mentioned. In the second, third, and fourth claims, the purpose of the inventors is indicated by the words (found in the third claim): "The novel employment as solvents of acetylene under pressure for the purpose of storage, transport, and industrial utilization." The fifth claim is: "The application, for the same purpose, of mixtures or combinations of the bodies specified." The 7th claim refers to the "method of storing acetylene gas in a small volume for lighting or other purposes."

The question at last comes to this: Whether the mention of a receiver in claim 6 is to be construed into an intention to describe and claim an apparatus patent in the sense that the "receiver"—which may mean anything in the nature of a receptacle having an exit and connecting appliances of some undescribed forms—is to dominate the repeated and apparently essential features of the method invention specifically described and claimed? We are not unmindful of the fact that the receiver is mentioned in the specification as having "a cock and the necessary adjuncts for connection directly or through an expansion chamber, with the appliances in which the gas is used by the consumer, the substitution of charged for empty receivers being readily effected." If this were considered in connection with claim 6, the receiver would still be lacking in certainty of description, and its designed function would remain indefinite except as a receptacle from which acetylene under pressure would be "evolved when required for use." It is most difficult to perceive how this would afford the slightest suggestion either of the "closed vessel" comprised in the patent in suit, or the object seemingly accomplished by it. See claims 1, 2, and 5 of the patent in suit in (C. C.) 166 Fed. 909. Evolving gas under pressure from the receiver according to claim 6, is not (as stated in the claims alluded to of the patent in suit) controlling the outlet, as by a reducing valve, "whereby the gas may escape therefrom at substantially uniform pressure." The difference between the receiver in the one instance and the closed vessel in the other would seem to be that the former was intended to contain, and through indifferent means of escape to supply, the only thing invented; while the latter was intended to be a distinctive and purposeful element of the invention. Can it be then that an invention so explicitly described and claimed as a method patent, as is that of the British patent, is by construction to be converted into an apparatus patent?

It is to be observed, further, that in ascertaining the true scope and meaning of an invention, the importance of looking at the claims stated in letters patent is recognized in England. Presto Gear Case Co., etc., v. Orme, Evans & Co. (1900) 18 R. P. C. 17, 23; Fulton's Law

of Patents, etc. (3d Ed.) p. 98. And the necessity for doing so in this country is found in the established rule in that regard. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 278, 24 L. Ed. 344; Railroad Co. v. Mellon, 104 U. S. 112, 118, 26 L. Ed. 639. And it would seem that the rule in this behalf prevailing in this country should be applied to a foreign patent, as well as to a domestic patent, where the court is called upon to determine the effect of the duration of the grant of the former upon that of the latter. Leeds & Catlin Case, supra, 213 U. S. 315, 29 Sup. Ct. 495, 53 L. Ed. 805. This is not made clear, however, by the latter decision, and we do not intend to rest our conclusion as to the nature and scope of the British patent upon that theory. For other and different reasons already stated, we believe that when the specification and claims of the British patent are considered as a whole, the invention is as before stated simply a method patent.

The restrictive clause of the act of Congress relied on (section 4887, U. S. Rev. Stat.) provides that "every patent granted for an invention which has been previously patented in a foreign country shall be so limited as to expire at the same time with the foreign patent." This language is plain and unambiguous. Clearly, the patent granted and so limited in this country must be for an invention previously patented in a foreign country, and they must in essential features be the same. As Mr. Justice McKenna said in the Leeds & Catlin Case when speaking of the patent acts (213 U. S. 319, 29 Sup. Ct. 501, 53 L. Ed. 805): "Each invention is given the full period of 17 years, which the statute prescribes for it. If limited at all, it can only be by a prior foreign patent identical with it." Besides the comments made in that decision upon other cases, like Siemen v. Sellers, 123 U. S. 276, 8 Sup. Ct. 117, 31 L. Ed. 153, relied on by appellants, see Westinghouse Elec. Mfg. Co. v. Stanley Instrument Co. (C. C. A. 1st Cir.) 138 Fed. 823, 826, 71 C. C. A. 189, where Judge Putnam fully considers the subject and a number of decisions.

The application of the limiting act of Congress, as made in the Leeds & Catlin Case, is helpful in passing upon the contention here made that the effect of this act was to limit the life of the patent in suit to that of the British patent. Analogy will be found respecting the difference between the two patents now in dispute, and the difference there held to exist between claims 5 and 35 of the United States patent granted to Berliner and involved in similar contention respecting the effect upon its term through the expiration of certain foreign patents. The substance of claims 5 and 35 may be found at pages 313 and 314 of 213 U. S., at page 495 of 29 Sup. Ct. (53 L. Ed. 805) of the report of the Leeds & Catlin Case. When speaking of a German patent granted to Berliner and a contention that it had expired and the patent in suit had expired with it, and also of a lecture delivered by Berliner, Mr. Justice McKenna said (213 U. S. 320, 29 Sup. Ct. 501, 53 L. Ed. 805):

"But granting that he did say so, and that it is so, the inquiry yet remains, Is it identical with the invention of claim 5 or claim 35 of the patent in suit? It is not of claim 5, for that is for a method, and a method is independent of the instruments employed to perform it. It is not of claim 35, for that

claim is for a combination, and one element is not the combination. Indeed, all of the elements are not. To be that—to be identical with the invention of the combination—they must be united by the same operative law. Of course, an element is a part, an essential part of the combination, and enters as an operative agent in the performance of its functions. But this does not make it identical with the combination. It may be novel, patentable of itself, subject to its own special monopoly, or it may be free for everybody's use, but whether free or not free, free when the combination was formed (invented) or became free, it is not identical with the combination. It follows, therefore, that the expiration of the German patent No. 53,622 for the reproducer did not affect the duration of the patent in suit so far as claims 5 and 35 are concerned, even though such reproducer is made the subject of one of the claims of the patent in suit."

It might therefore be conceded that the product described in the British method patent is the same as the product contained in the closed vessel described in the patent in suit; and still the difference between the two patents now under consideration would, under the decision in the Leeds & Catlin Case, prevent the limitation in term of the British patent from affecting the term of the patent in suit. These views require us with deference to decline to follow the decision in Commercial Acetylene Co. v. Searchlight Gas Co., supra. As Judge Denison forcibly said of the patent in suit (C. C.) 188 Fed. at page 92):

"It was granted in 1900 for 17 years. The patent office did not require it to be limited on its face, although the British patent was of record in the United States Patent Office. Now, to shorten the 17-year term into a 10-year term, is a step that I think should not be taken unless the statute is clearly applicable."

[5] We are not disposed to disturb the finding necessarily involved in the decision below that appellants were engaged in the performance of the infringing acts complained of in the bill and set out by way of affidavits and circulars. Nor is the very able argument of counsel for appellants convincing, upon the subject of contributory infringement. Leeds & Catlin v. Victor Talk. Mach. Co. (No. 2) 213 U. S. 325, 29 Sup. Ct. 495, 53 L. Ed. 805; Commercial Acetylene Co. v. Autolux Co. (C. C.) 181 Fed. 387; see, also, notes to Edison Electric L. Co. v. Peninsular Light, etc., Co., 101 Fed. 831, 43 C. C. A. 485; Æolian Co. v. Juelg Co., 155 Fed. 119, 86 C. C. A. 205, and notes; Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co. (C. C. A. 6th Cir.) 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728; Rupp & Wittgenfeld Co. v. Elliott (C. C. A. 6th Cir.) 131 Fed. 730, 65 C. C. A. 544. The recent decision announced by Mr. Justice Holmes in Kalem Co. v. Harper Bros., 222 U. S. 55, 63, 32 Sup. Ct. 20, 56 L. Ed. ——, lays down general principles of contributory infringement applicable to copyright, which we think are analogous to the issues presented here on the subject of contributory infringement.

The order made in the form it was given in the court below is affirmed, with costs.