MURRAY et al. v. BENDER.

(Circuit Court of Appeals, Ninth Circuit. May 16, 1901.)

No. 618.

APPEAL—REVIEW—ORDER GRANTING PRELIMINARY INJUNCTION.

On an appeal from an interlocutory order granting a preliminary injunction restraining defendants from removing from a building certain property claimed by complainant to be a part of the realty, where the allegations of the bill and the proofs upon the hearing were sufficient to show prima facie that complainant was the equitable owner of the realty, the court will not enter upon the question whether or not the property involved constitutes fixtures, which is a question to be determined when the suit is tried on the merits; the rule being that such an order will be affirmed unless an abuse of legal discretion appears.

Appeal from the Circuit Court of the United States for the District of Montana.

McHatton & Cotter, for appellants.
John F. Forbis, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The facts of this case are somewhat complicated, and a clear statement of them is essential to the proper understanding and determination of it. In the year 1888 the Grand Opera-House Company was the owner of certain real property in Butte City, Mont., which on the 29th day of September, 1888, it conveyed to John Maguire; taking his note for $17,000, the purchase price, secured by a mortgage upon the property. Maguire thereupon began the construction of an opera house upon the ground, in the construction of which he became indebted to various parties for labor and material performed and used in and about the erection of the building. For that indebtedness the claimants filed liens against the building in accordance with the provisions of a state statute. Subsequently an action was brought by the lien claimants against Maguire in one of the courts of the state to foreclose them, in which action a decree of foreclosure was entered on the 27th day of January, 1890, under which decree the property was sold on the 19th day of May, 1890, to William R. Kenyon. There were several other judgments against Maguire, all of which were liens upon the property,—one in favor of Edward King, which was assigned to James A. Murray; one in favor of the First National Bank of Butte; and another in favor of the Butte Hardware Company,

which latter' judgment was also assigned to Murray. Under his assignment of the King judgment Murray redeemed from the sale under the foreclosure of the mechanics' liens, and the First National Bank then redeemed from Murray, and Murray again redeemed,—this, time from the bank,—and on April 10, 1891, received a sheriff's deed for the premises. Murray thereby became substituted to Maguire's rights in the property, which, however, remained subject to the mortgage theretofore executed by Maguire to the Opera-House Company for the purchase price of the land upon which the building was erected. After the completion of the building, and during the existence of the mechanics' liens, and before Murray had received the sheriff's deed under and by virtue of the proceedings in the suit for the foreclosure of those liens, Maguire purchased the chairs, scenery, and other furniture for the opera house, which constitute the subject-matter of the present suit, and to pay for it borrowed the money of one John O'Rourke, giving him as security for the money so borrowed a chattel mortgage thereon, which was duly verified and recorded, and which seems to have been extended from time to time until Murray, in the year 1893, advanced to Maguire the money necessary to pay O'Rourke, taking from Maguire a transfer of the chairs, scenery, and other furniture. Prior to the last-mentioned transaction, and on the 29th day of May, 1891, the Grand Opera-House Company brought suit in one of the district courts of the state to foreclose the mortgage executed to it by Maguire in 1888. To that suit Murray was, among others, made a party defendant, upon the ground, as alleged in the complaint, that those defendants claimed some lien or interest in the property, all of which it was averred were subject to the complainant's rights. The complainant in that suit also asked that all of the defendants be required to set up any lien or claim they had. Murray appeared, and by answer set up the various mechanics' and other liens, the decree rendered thereon, the redemptions had thereunder, and his right under the sheriff's deed executed to him on the 10th day of April, 1891. That action was tried and a decree rendered therein on the 12th day of March, 1895, from which an appeal was taken to the supreme court of the state, and is reported in 14 Mont. 558, 37 Pac. 607. The result of that litigation was a judgment that Murray was the owner of the building, with the right to remove the same from the land upon which it was erected at any time prior to the expiration of the period of redemption from the sale under the Grand Opera-House Company's mortgage, and that the mortgage of the Opera-House Company was a superior lien upon the land itself. Under that decree the land was sold on the 18th day of April, 1896, to the Grand Opera-House Company. The right to redeem from that sale continued for six months thereafter. Before the expiration of those six months Murray began to exercise the right given him by the above-mentioned decree, by removing from the opera house, the chairs, scenery, and other furniture, and to tear down the building itself. Prior to that, and during the pendency of the foreclosure suit of the Grand Opera-House Company against Maguire, to wit, in the year 1894, Murray undertook to remove from

the building the chairs, scenery, and other furniture, whereupon he was, at the suit of the Opera-House Company, enjoined by an order entered in the district court for the Second judicial district of Montana on the 3d day of July, 1894. In 1896, after he had removed the chairs, scenery, etc., and stored them elsewhere, and while actually engaged in razing the building itself, Murray purchased a majority of the stock of the Grand Opera-House Company, and thereupon ceased removing the building, and allowed the time during which he was, by the final decree entered in the foreclosure suit of the Grand Opera-House Company against Maguire, permitted to do so, to expire, after which he repaired the damage that he had done to the building, and restored the chairs, scenery, and other furniture to their place in the opera house. Subsequent to such restoration of both the opera house, and the chairs, scenery, and other furniture, to wit, on the 3d day of December, 1896, actions were commenced against the Grand Opera-House Company by John O'Rourke, John F. Forbis, and John O. Bender to recover money alleged to be due the respective plaintiffs in the suits, in which actions writs of attachment were issued and levied upon the property of the Opera-House Company. The complaint in the action brought by O'Rourke contained two counts. In that action a judgment was rendered on the 16th day of September, 1897, in favor of the plaintiff on the first cause of action counted on, on which an execution was thereafter issued, under which, on the 27th day of December, 1897, the real property of the Grand Opera-House Company was offered for sale by the sheriff of the county, and by him sold to Silas F. King. On the 19th day of January, 1899, the sheriff executed to King a deed for the property so sold. In the action brought by Bender against the Grand Opera-House Company, judgment was rendered in favor of the plaintiff on the 14th day of May, 1898, and in that brought by Forbis against the same company judgment was rendered in favor of the plaintiff on the 21st day of May, 1898. On the part of the complainant in the present suit it is contended that on the 27th day of December, 1898, O'Rourke, claiming still to have a lien under the writ of attachment issued in the suit brought by him against the Opera-House Company by reason of the second cause of action stated in his complaint, redeemed from the sale made by the sheriff to King, and that he (Bender), by virtue of the judgment recovered by him on the 14th day of May, 1898, redeemed from O'Rourke, and that Forbis, by virtue of the judgment recovered by him on the 21st day of May, 1898, redeemed from Bender on the 10th day of January, 1899. After Murray acquired a majority of the stock of the Grand Opera-House Company, he caused John Maguire, E. L. Chapman, and Charles O. Donnell to be elected trustees of that company; and on November 1, 1898, the company, through them, leased the building, chairs, scenery, and other furniture to G. O. MacFarland. On the 25th day of February, 1899, Forbis executed to Bender a conveyance of all his right, title, and interest in and to the Opera-House Company property; and Bender shortly thereafter served a notice upon MacFarland and Silas F. King that he was the owner of, and entitled to the

possession of, all of the property, and that they held the same in trust for him, and demanded of them a restitution of it, and the payment to him of the rents therefor; and on the 4th day of April, 1899, he commenced a suit in the United States circuit court for the district of Montana against King and MacFarland to obtain a decree adjudging that they held the property in trust for him, in which suit the court appointed a receiver to collect from MacFarland the rents of the property during the pendency of the suit. That suit was pending at the time of the commencement of the present one, and that fact was not only alleged in the bill in the present suit, but the bill of complaint therein, as well as the answers of King and MacFarland thereto, was put in evidence on the hearing of the application for an injunction in the present case, over the objections, however, of the defendants herein. The bill in the present suit shows upon its face that the opera-house property was duly sold on the 27th day of December, 1897, by the sheriff of the county in which it is situated, under the judgment rendered and entered in the case of O'Rourke against the Grand Opera-House Company, and that at that sale Silas F. King was the highest bidder, and therefore became the purchaser of the property, and received the sheriff's certificate of purchase, in accordance with a provision of the statute of the state; that neither the Grand Opera-House Company, nor any one on its behalf, redeemed the property from the sale within the time allowed by the state statute; and that, notwithstanding the redemptions from that sale under which the complainant claims, the sheriff on the 19th day of January, 1899, executed to King a deed thereof. The bill alleges that "John O'Rourke on the 27th day of December, 1898, duly redeemed said property from the said sheriff's sale, and that thereafter, upon the said 27th day of December, 1898, the complainant duly redeemed said property from the said sale and from the redemption made by the said John O'Rourke, and that thereafter, on the 10th day of January, 1899, John F. Forbis redeemed said property from the said sale, and from the said redemption made by the said John O'Rourke and this complainant"; and the evidence introduced upon the hearing of the motion for an injunction not only showed the redemption sought to be made by O'Rourke on the 27th of December, 1898, under and by virtue of the attachment lien arising upon the levy of the attachment issued in the action commenced by him against the Opera-House Company on the 3d day of December, 1896, the redemption from O'Rourke by Bender thereafter and on the same day, and the redemption by Forbis from Bender on the 10th day of January, 1899, the rights of whom, as has already been said, were conveyed to Bender by the deed executed by Forbis on February 25, 1899, but the evidence also showed that the complainant, Bender, on the 27th day of December, 1898, which was within the time allowed by the state statute for the purpose, redeemed from the sale by paying to the sheriff, for King, the amount of the purchase money, with interest and cost. Without regard, therefore, to O'Rourke's attempted redemption and the subsequent alleged redemptions from him, it appears that the complainant effected a legal

redemption from the sale on the 27th day of December, 1898. One of the allegations of the bill is that:

"The said property, and the whole thereof, is at this time held in trust for the use of this complainant by the said G. O. MacFarland and Silas F. King, but that notwithstanding this the defendants James A. Murray, E. L. Chapman, and the Grand Opera-House Company are preparing and threatening to detach and remove all of the same from the said building, and that the said defendants James A. Murray and E. L. Chapman have served their written notice on the said G. O. MacFarland, and upon the receiver appointed by this court, that they will immediately detach and remove all of the said fixtures above described from the said opera-house building."

Whether or not the chairs, scenery, and other furniture do or do not constitute fixtures goes to the merits of the suit, and is the principal question involved in it. It ought not, we think, to be determined on this appeal from an interlocutory order enjoining the defendants from the commission of any of the threatened acts pending the suit; the settled rule being that such an order of the trial court will be affirmed unless it appears upon a consideration of all the evidence upon which its action was based that its legal discretion to grant or withhold the order was improvidently exercised. We discover in this case no such abuse of discretion. Judgment affirmed.