FIREBALL GAS TANK & ILLUMINATING CO. et al. v. COMMERCIAL ACETYLENE CO. et al.†

(Circuit Court of Appeals, Eighth Circuit. September 2, 1912.)

No. 3,745.

*(Syllabus by the Court.)*

1. INJUNCTION (§ 135*)—APPEAL AND ERROR (§ 954*)—INTERLOCUTORY INJUNCTIONS—DISCRETION OF TRIAL COURT—CLEAR PROOF OF ABUSE OF DISCRETION REQUISITE TO DISSOLVE.

   Granting or refusing a temporary injunction is intrusted to the discretion of the court of original jurisdiction, not to the discretion of the appellate court.

   In the absence of a violation of the rules and principles of equity established for the guidance of the court of original jurisdiction, the action of that court in granting or refusing such an injunction must be sustained, unless there is clear proof of abuse of its discretion.

   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 304; Dec. Dig. § 135;* Appeal and Error, Cent. Dig. §§ 3777–3781; Dec. Dig. § 954.*]

2. PATENTS (§ 297*)—PRELIMINARY INJUNCTION—EFFECT OF PRIOR DECISIONS.

   When there has been a prior adjudication sustaining a patent and the infringement thereof, in the same or in another circuit, where its validity was contested on full proofs, a Circuit Court should, on motion

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied November 19, 1912.

for preliminary injunction. sustain the patent and leave the determination of its validity until after the final hearing.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 481–488; Dec. Dig. § 297.*]

3. PATENTS (§ 324*)—APPEAL AND ERROR—PRELIMINARY INJUNCTION—DISPUTED ISSUES OF FACT RESERVED UNTIL FINAL HEARING.

Where questions of fact and of mixed law and fact are presented to the appellate court on an appeal from the court below which has issued an injunction upon a prior adjudication of the validity and infringement of the patent, this court will not consider and determine these questions, but will reserve their decision until after the final hearing upon the issues they present below. The facts recited upon which this ruling is founded.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 600–606; Dec. Dig. § 324.*]

Appeal from the District Court of the United States for the Eastern District of Missouri.

Bill by the Commercial Acetylene Company and others against the Fireball Gas Tank & Illuminating Company and others. Decree for complainants, and defendants appeal. Affirmed.

Hugh K. Wagner, of St. Louis, Mo., for appellants.

Keyes Winter and John P. Bartlett (Clarence Winter and John H. Holliday, on the brief), for appellees.

Before SANBORN and HOOK, Circuit Judges, and WILLARD, District Judge.

SANBORN, Circuit Judge. This is an appeal from an order which granted an interlocutory injunction against the infringement by the defendant below of claims 1, 2, and 5 of letters patent No. 664,383, issued to Claude & Hess on December 25, 1900, for a combination of elements which constituted an apparatus for storing and distributing acetylene gas. The thing sought by the inventors was an apparatus by means of which acetylene gas, which in its normal state is inflammable and explosive, could be safely inclosed, stored, and, if desired, transported in a reservoir or tank to the place where it was to be used and there slowly discharged through many hours, to produce light and heat. To attain this end, Claude & Hess placed in a steel tank or closed reservoir, provided with an inlet through which it could be charged and an outlet through which it could be discharged, and with suitable valves in these openings to open and close them, a liquid solvent, such as acetone or alcohol and acetylene gas forced into this liquid in the reservoir and confined there under a pressure of about 12 atmospheres. Under these circumstances, acetone absorbed 300 times its volume of acetylene gas, and while acetone and acetylene gas were both normally inflammable and explosive, the supersaturated solution produced and stored in the way described in the specification of this patent was neither inflammable nor explosive and could be safely and conveniently stored, transported in, and used from the reservoirs. The apparatus immediately went into general use.

Suitable tanks containing such a supersaturated solution for the purpose of furnishing light for automobiles were manufactured and used, and when the gas was exhausted from them they were charged and used again and again as often as desired. The complainants are corporations which have succeeded to the rights of Claude & Hess. Under their patent they have been manufacturing and selling an apparatus of this character for the purpose of furnishing light for automobiles, which is called the "Prest-o-lite" tank. The defendants were manufacturing and selling such an apparatus called the "Fireball" tank, which is claimed to be an infringement of the patent in suit.

In their specification for this patent Claude & Hess wrote:

"The apparatus is to be charged or prepared at a central station or distributing point and shipped or transported to the intended place of use as a complete article or package adapted to be placed in communication with the burners or pipes of a building, room or space to be lighted. * * * Contained within the reservoir is a fluid, such as alcohol or acetone, capable of dissolving acetylene gas. * * * In order that the gas delivered from the receptacle may pass into the pipes to the burner under a substantially uniform pressure (the pressure of the gas within the reservoir of course decreasing as the gas passes out therefrom), a reducing valve $d$, of any suitable or usual construction, is interposed between the interior of the receptacle and the outlet $c$ therefrom. * * * It is not intended to limit the invention to the specific construction herein shown, since modifications may obviously be made."

The first claim of the patent is:

"1. A closed vessel containing a supersaturated solution of acetylene produced by forcing acetylene into a solvent under pressure, said vessel having an outlet for the acetylene gas, which escapes from the solvent when the pressure is released or reduced, and means for controlling said outlet, whereby gas may escape therethrough at substantially uniform pressure, substantially as described."

The second claim secures "a prepared package consisting of * * * a reducing valve" and the other elements of the apparatus, and the fifth claim secures, "as a new article of manufacture, a gas package comprising" acetone as the liquid solvent, the reducing valve, and the other elements of the combination.

An order to show cause why the preliminary injunction should not issue was made on October 16, 1911. It was followed by an answer, affidavits, counter affidavits, patents, and publications, which fill more than 500 printed pages of the record before us. The application for the injunction was argued and submitted to the court on these voluminous proofs upon November 15, 1911, and on January 22, 1912, the order for the injunction was made.

[1] The granting or withholding of an interlocutory injunction rests in the sound judicial discretion of the court of original jurisdiction, and, where that court has not departed from the equitable rules and principles established for its guidance, its orders in this regard may not be reversed by the appellate court without clear proof that it has abused its discretion. An appeal from such an order does not invoke the judicial discretion of the appellate court. The question is not whether or not the appellate court would

have made or would make the order. It is to the discretion of the trial court, not to that of the appellate court, that the law has intrusted the granting or refusing of such an injunction, and the question here is: Does the proof clearly establish an abuse of that discretion by the court below? Massie v. Buck, 128 Fed. 27, 31, 62 C. C. A. 535, 539; Love v. Atchison, T. & S. F. Ry. Co., 185 Fed. 321, 330, 107 C. C. A. 403; High on Injunctions (4th Ed.) § 1696; Higginson v. Chicago, B. & Q. R. R. Co., 102 Fed. 197, 199, 42 C. C. A. 254, 256; Interurban Ry. & Terminal Co. v. Westinghouse E. & Mfg. Co., 186 Fed. 166, 170, 108 C. C. A. 298, 302; Kerr v. City of New Orleans, 61 C. C. A. 450, 454, 126 Fed. 920, 924; Thompson v. Nelson, 18 C. C. A. 137, 138, 71 Fed. 339, 340; Société Anonyme Du Filtre Chamberland Sys. Pasteur v. Allen, 33 C. C. A. 282, 285, 90 Fed. 815, 818; Murray v. Bender, 48 C. C. A. 555, 559, 109 Fed. 585, 589; U. S. Gramophone Co. v. Seaman, 51 C. C. A. 419, 423, 113 Fed. 745, 749.

At the close of his brief in this case counsel for the defendants below summarizes his contentions into seven reasons why this question should be answered in the affirmative. Four of them are that the prior state of the art discloses the fact that the patent is void for lack of novelty and that it expired with the expiration of certain foreign patents which he claims were for the same apparatus as that secured by the domestic patent, and three of them are that the defendants escape infringement, although their apparatus is literally described by the first claim of the patent to Claude & Hess, because they use a needle valve in the outlet of their tank in place of the specific reducing valve described in the specification of Claude & Hess, because they use terpeline as the liquid solvent instead of the acetone used by the complainants, and because the outlet of their tank is not located above the level of the liquid solvent where the specification of Claude & Hess places theirs.

[2] It is an incontrovertible rule of equity jurisprudence that where there has been a prior adjudication sustaining a patent and an infringement thereof in the same or another circuit, where the validity of the patent has been contested on full proofs, the Circuit Court should, upon a motion for a preliminary injunction, sustain the patent and leave the question of its validity to be determined upon the final hearing. Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 312, 29 Sup. Ct. 495, 53 L. Ed. 805; Interurban Ry. & Terminal Co. v. Westinghouse E. & Mfg. Co., 186 Fed. 166, 170, 108 C. C. A. 298.

On January 22, 1912, when the court below made the order for the injunction, the validity of this patent had been contested on full proofs, had been sustained on final hearing and its infringement by the use of a tank in which a needle valve had been substituted for the reducing valve described in the specification of Claude & Hess had been adjudged on January 13, 1909. Commercial Acetylene Co. v. Avery Portable L. Co. (C. C.) 166 Fed. 907, 910-912, 913-915. Counsel argues that the fact which appears in

this case, but was not proved in that case, that Claude & Hess knew in June, 1897, that Berthelot & Vielle had discovered "that the dissolution of acetylene in acetone under a pressure which is not very much over 10 atmospheres cannot explode, that only is explosive the space above the liquid which is filled with acetylene gas" takes this case out of this rule. It is, however, claimed by the complainants that the discovery here mentioned was not the invention secured by this patent, but that that invention was the combination of the tank, the liquid solvent in the tank, the acetylene forced into and secured in the tank, and the inlet and outlet so made and provided with valves that the tank could be conveniently charged, that the charged package could be safely and conveniently transported, and that the acetylene therein could be discharged with a low and uniform pressure wherever desired. Counsel made other less important claims of new evidence of the prior art. But in view of the prior adjudication it cannot be held that it was any abuse of discretion in the court below to reserve the final decision of these claims until the hearing of the case upon the merits.

The claim of counsel for the defendants that the patent had expired was based on the British patent to Claude & Hess No. 29,-750, issued June 30, 1896, which expired June 30, 1910, and upon the German patent to Claude & Hess, issued August 27, 1896, which expired August 27, 1911, and upon the provision of section 4887 of the Revised Statutes, U. S. Comp. Stat. 1901, p. 3382, that every patent granted for an invention which has been previously patented in a foreign country shall be so limited as to expire at the same time as the foreign patent. The defendants claimed, as other defendants had claimed before, that these foreign patents were for the apparatus secured by the domestic patent in suit, and hence that they limited its life, while the complainants insisted that they were patents for the process used by Claude & Hess and not for their combination or apparatus and that they did not affect the domestic patent for the latter. The Supreme Court had decided that:

"A process and an apparatus by which it is performed, are distinct things. They may be found in one patent: they may be made the subject of different patents. So may other dependent and related inventions. If patented separately, a foreign patent for either would not affect the other." Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 318, 29 Sup. Ct. 495, 53 L. Ed. 805.

The Circuit Court of Appeals of the Sixth Circuit had cited and followed that decision in Acme Acetylene Appliance Co. v. Commercial Acetylene Co., 192 Fed. 321, 326, 112 C. C. A. 573, 578, and in Century Electric Co. v. Westinghouse Electric & Mfg. Co., 191 Fed. 350, 359, 360, 112 C. C. A. 8, 17, 18, this court had held that a patent for a process which described the machine and a patent for the only known machine by which the process could be practiced, which described the process, were patents for separate inventions and neither was affected by the other. The terms of the British patent lent themselves more strongly than those of

the German patent to the argument that it was for an apparatus, and on April 25, 1911, Circuit Judge Kohlsaat, on an application for a preliminary injunction, so held, a conclusion to which he has adhered on the final decision of that case in an opinion handed down on June 26, 1912, six months after the court below made its order.   Commercial Acetylene Co. v. Searchlight Gas Co. (C. C.) 188 Fed. 85.   But Judge Denison, on April 26, 1911, had filed an opinion in which he had reached the opposite conclusion and upon a motion for a rehearing, upon which Judge Kohlsaat's opinion was urged upon his attention, he considered it and declared that notwithstanding he was satisfied that his own opinion was correct. Commercial Acetylene Co. v. Acme Acetylene Appliance Co. (C. C.) 188 Fed. 89, 91.   An appeal had been taken from the order of Judge Denison to the Circuit Court of Appeals of the Sixth Circuit.   The opinions of Judge Kohlsaat and Judge Denison had been urged in support of the respective contentions of the parties in that court, and on December 5, 1911, it had delivered a considered and unanimous opinion that the British patent was for a process and not for an apparatus, that it was not for the same invention as the patent in suit, and that it did not limit its terms. Acme Acetylene Appliance Co. v. Commercial Acetylene Co., 192 Fed. 321, 326, 112 C. C. A. 573, 578.   Such was the state of the adjudications upon this subject when the court below was required to determine whether or not it would refuse an injunction because the domestic patent had expired.   There had been, it is true, no adjudication of the character of the German patent; but its terms are much less favorable to the contention that it is a patent for an apparatus than are those of the British patent.   The specification mentions the "present process" five times, describes it, describes two apparatus, gives figures of them, and closes with these words:

"Indeed, the apparatus described above and shown in figures 1 and 2, are only given by way of example for explaining the process and the latter is independent of the described constructional forms."

The German patent has but one claim, and that reads in this way:

"The employment of liquids charged with acetylene under pressure for the purpose of utilizing acetylene for illumination, motive power, heating and the like, characterized by the acetylene being absorbed under pressure by a suitable liquid saturated with acetylene being preserved or contained in suitable vessels from which the acetylene gas can be supplied for use, a pressure regulator being preferably interposed."

It is the claims of a patent, not the narratives or descriptions in the specifications, that portray, define, and limit the invention that is patented.   Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 315, 29 Sup. Ct. 495, 53 L. Ed. 805; Railroad Company v. Mellon, 104 U. S. 112, 118, 26 L. Ed. 639; Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 279, 24 L. Ed. 344. The court below was favored with the affidavits of experts and the arguments of counsel relative to the nature of the invention patented by the German patent, relative to the state of the prior art,

relative to the validity and expiration of the patent in suit and relative to its infringement by the defendants. In Victor Talking Machine Co. v. Talk-O-Phone Co. (C. C.) 146 Fed. 534, claims 5 and 35, of Berliner patent, No. 534,543, had been sustained and adjudged infringed in 140 Fed. 860. In that subsequent suit against another defendant an application for a preliminary injunction was made, and over 500 pages of affidavits and briefs were presented to the Circuit Court upon the hearing of the application. Twelve defenses, claimed to consist of new matter not before the court on the former hearing, or to relate to matters which were not then discussed or considered, were presented. Some of these defenses consisted of new matter discovered in the prior art, some were that the patent had expired because prior foreign patents for the same invention had expired, some were that the defendant had not infringed and that the complainant was guilty of laches. The Circuit Court considered some of these defenses, deferred consideration of laches, noninfringement, and some others, expressed the opinion that no new matter had been introduced which would in his judgment have led the court which made the prior adjudication to reach a different conclusion from that which it had announced, and added:

"But, even if I am mistaken in this view, and if the expiration of the Suess Canadian patent is a complete defense, or if a decision of the questions raised as to the character and scope of the various patents, now introduced for the first time, should be postponed until final hearing, yet I am constrained to grant the injunction in order to permit an appeal and a determination of the questions at the earliest possible moment."

Thereupon the court ordered the issue of the interlocutory injunction. An appeal from this order was taken, and it was affirmed by the Circuit Court of Appeals of the Second Circuit in open court without an opinion. Victor Talking Machine Co. v. Leeds & Catlin Co., 148 Fed. 1022, 79 C. C. A. 536. The case was then taken to the Supreme Court by writ of certiorari. In its opinion that court noticed the fact that the Circuit Court had not passed upon the question of infringement, set forth the quotation from its opinion made above, recited that the lower courts had also reserved, until the hearing on the merits, the consideration of the defense that the claims in suit were void because they were for functions of machines and not for the machines themselves, and then said:

"In passing on the foreign patents the Circuit Court considered that the prior adjudications fortified the presumption of the validity of the patent in suit, and established its scope, and that the new matter introduced did not repel the presumption, or limit the extent of the patent. That the lower courts properly regarded the prior adjudication as a ground of preliminary injunction is established by the cases cited in Walker on Patents, § 655 et seq. See, also, Robinson on Patents, § 177 et seq. And in that aspect the question must be considered, and so considering it we may pass the defenses of anticipation, whether complete or partial, and the defense of infringement." Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 311, 312, 29 Sup. Ct. 495, 53 L. Ed. 805.

Passing then the defenses of anticipation and infringement in the case in hand, as we well may under the decisions of the Su-

preme Court and the Circuit Court of Appeals of the Sixth Circuit in the Leeds & Catlin Case, and under the other decisions which have been cited to the same effect, and bearing in mind the facts that on January 22, 1912, the validity of the patent and its scope, that it was not anticipated in the prior art and that the use of a needle valve in place of the specific reducing valve described in the patent did not avoid infringement, had been adjudicated in the year 1909, after full and final hearing, that two chancellors had reached opposite conclusions on the question whether or not the apparatus secured by the domestic patent had been patented by the British patent, that the Circuit Court of Appeals of the Sixth Circuit, after a consideration of the opinions of both these judges, had delivered an unanimous opinion that it was not so patented, that the terms and claim of the German patent were more favorable to a like decision regarding that patent than were those of the British patent, there is no rational or logical escape from the conclusion that the evidence in this record falls far short of clearly or preponderantly showing that the court below was guilty of an abuse of discretion in its issue of the interlocutory injunction.

The claim of the defendants in this case that they do not infringe because they use terpeline instead of acetone, which claim is conditioned by conflicting testimony and by the counterclaim that the patent is not limited to the use of acetone or alcohol, and that they do not infringe because they place the outlet of their tank below the level of the liquid solvent, a claim that is conditioned by explanatory evidence, the claim that the patent is void because an amendment to the specification was not accompanied with the oath required by rule 48 of the Patent Office when the theory of an invention and the mode of applying it is first introduced by the amendment (Steward v. American Lava Co., 215 U. S. 161, 30 Sup. Ct. 46, 54 L. Ed. 139), which is met by the claim that the amendment in question had no such effect, the claim that some of the affidavits were not competent, and the other claims of the defendants in this case, have been considered before reaching this conclusion, although some of them have not been discussed in this opinion. But what has been already said is equally applicable to each of these, and there is nothing in this case to sustain the theory that the court below abused its discretion in the issue of the injunction.

[3] Counsel for the defendants invites the court to consider and determine the equities of this entire case and to dismiss the bill, as did the Supreme Court in Mast Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 495, 20 Sup. Ct. 708, 44 L. Ed. 856. But the suit in hand is more analogous to the Leeds & Catlin Case, 213 U. S. 311, 29 Sup. Ct. 495, 53 L. Ed. 805, in which the Supreme Court denied a like prayer with the remark:

"If we should yield to this invocation and attempt a final decision, it would be difficult to say whether it would be more unjust to petitioner or to respondent."

198 F.—42

The decisions of many of the questions the defendants present must be determined by the consideration of conflicting testimony, many of the questions they raise are questions of mixed law and fact, the just determination of which may be much aided by the testimony of witnesses, the interests involved here are large, and, in the condition of the litigation concerning this patent, the ends of justice would be better and more certainly attained by reserving, and we do hereby reserve, our opinion upon all the questions it presents, except the question of the abuse by the court below of its discretion in the issue of the injunction, until the affidavit stage of this proceeding shall have been passed, until the rights of these parties shall have been tested by the production, hearing and cross-examination of their witnesses according to the salutary and searching practice of the common law, and until the court below, at the final hearing, has investigated and decided the issues these parties raise in the light of that testimony and of the argument of counsel. The order for the injunction must accordingly be affirmed, and it is so ordered.

HOOK, Circuit Judge. This case is exceptionally circumstanced. I concur in the result for the reasons mentioned in the last paragraph of the opinion.