SMITH-LEE CO., Inc., v. PLYMPTON PAPER PRODUCTS CO.

(District Court, S. D. New York. June 19, 1926.)

1. Patents ⬄328—1,458,535, claim 1, for paper cap for milk bottles, held valid, but not infringed.

Meldrum patent, No. 1,458,535, claim 1, for paper bottle cap having a wire pull for removing cap without interfering with the sealing of bottle, particularly used for sealing milk bottles, *held* valid, but not infringed.

2. Patents ⬄174—Patent, not pioneer, making slight improvement on prior art, must be strictly construed.

Patent, which is not a pioneer, but makes slight improvement over prior art, must be strictly construed.

In Equity. Patent infringement suit by the Smith-Lee Company, Inc., against the Plympton Paper Products Company. Decree for defendant. Affirmed in 18 F.(2d) 154.

A. Parker Smith, of New York City (James A. Watson, of Washington, D. C., of counsel), for plaintiff.

Victor D. Borst and William M. Stockbridge, both of New York City, for defendant.

WINSLOW, District Judge. This action concerns the patent known as the Meldrum patent, the property of the plaintiff, No. 1,-458,535, issued June 12, 1923. The only claim in issue is No. 1, as follows:

"1. A bottle cap comprising a disk of paper board having a wire 'pull,' said wire being in the form of a loop having its ends passing through the disk within and near the margin thereof from the upper side to the lower side and again passing through from the lower side to the upper side, the extreme ends being folded against the upper face of the cap."

[1] The device is a bottle cap, particularly used for sealing milk bottles. The circular caps are commonly made out of paper board, and the wire "pull" is an attachment for removing the cap, while not interfering with the sealing of the bottle. These "pull" devices have been common for many years, and several patents have been issued for the various kinds. The advantage of the wire "pull" is that it can be made of very thin wire, and thus does not interfere with the packing of the caps closely in tubes, nor does it interfere with the feeding of these bottle caps laterally from a column of tubes into position to be forced into the mouths of the bottles in the capping machines used in large dairies. When using the thin wire, the wire loop, after being attached or anchored to the disk, is pressed into the disk, so that in a column of such disks the wire practically occupies no additional space, nor are the disks separated by the wire loops. The patent in question is not a pioneer patent, but, apparently, is a slight improvement over the prior art.

The prior art leads us to the Plympton patent, No. 886,014, which was a cap in which a flat metal strip was bent in U-shape. It encircled and embraced the cap after being anchored to the cap on its underside. This was one of the first caps of the "pull" type to go through a capping machine.

In the Plympton patent, No. 1,362,181, the wire passed around the edge of the cap, but the mechanical construction was substantially the same as the Meldrum patent, except that Meldrum, in the patent in suit, made an advance over the Plympton patent by having the ends of the wire loop pass through the paper disk "within and near the margin thereof from the upper side to the lower side," etc., instead of around the edge of the cap. The wire passing around the edge of the cap was objectionable, because of possible leakage.

The Moak patent, No. 1,361,394, which preceded the Meldrum patent, was really the forerunner of the defendant's cap. In the Moak patent, the ends of the wire loop penetrated the cap to the underside, the tips being bent back over the edge of the top side, thus being open to the same objection which was made to the earlier Plympton patent. In the defendant's cap, the ends of the wire loop penetrate the cap, not at or near the margin, but away from it, and the tips, penetrating from below to the front of the cap, are bent over in the same line of direction as the upper end of the loop.

[2] I think that the invention of the plaintiff must be strictly construed, assuming that it is an advance over the prior art, and that the claim in question, which covers a wire "pull" in the form of a loop having its ends passing through the disk "within and near the margin" of the cap, etc., is not the mechanical equivalent of defendant's cap, where the wire loop passes through at a distance further from the edge, and where the returning tips are in the same line of direction. The leverage of the patent in suit is probably better than that of defendant's cap; but there is some evidence to indicate that defendant's cap is susceptible of manufacture with fewer mechanical operations. It is of interest to know that the defendant's cap is manufactured and sold in substantial quantities. The plaintiff's cap has never been manufactured or sold commercially.

The court believes, however, that the plaintiff should have the benefit of the doubt in finding that his patent is valid, but limited to the claim. In like manner, it is my opinion that such limitation excludes the defendant's device from the claim of infringement.

Decree for defendant, on the ground that defendant's device does not infringe on the plaintiff's claim.