## DUPLEX ELECTRIC CO. v. PADUA HOLD-UP ALARM CORPORATION.

Circuit Court of Appeals, Second Circuit.
January 14, 1929.

No. 95.

Nelson Littell, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). The appellant contends that, if claim 6 of the patent in suit is to be interpreted broadly enough to cover the device alleged to infringe, then the claim is invalid, in view of the prior art. Use of a single push button operated by foot pressure to set off a burglar alarm was old in the art, as illustrated in patent No. 848,016, to Donnenworth and patent No. 1,093,801 to Phelps; closing multiple circuits by depression of a bar is shown in McCarthy, No. 300,098; while the patent to Edwards, No. 808,147, for bowling alley foul line, discloses the idea of operating an electric signal by stepping upon a foul line, or depressible strip, set in the floor of a bowling alley. Thus it is apparent that Williams' contribution to the art was, at best, of narrow scope, and undeserving of so broad an interpretation as might be accorded to a pioneer patent. See Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 617, 27 S. Ct. 307, 51 L. Ed. 645; Electric Protection Co. v. American Bank Protection Co., 184 F. 916, 922 (C. C. A. 8); Smith-Lee Co. v. Plympton Paper Products Co., 18 F.(2d) 153, 154 (C. C. A. 2).

While we are inclined to think the patent valid and not anticipated, the case may be disposed of without determining its validity. If valid, it must be limited to the combination disclosed by the claim, and, so limited, it is not infringed.

Claim 6 calls for the following four elements: (1) Depressible contact means (the push buttons); (2) a box or housing carrying the contact means; (3) a pivotally mounted bar operative to depress the push buttons; and (4) "means carried by the housing and operative to retain said pivoted bar in its operative position over said contact means when the mechanism is in use."

The issue of infringement turns upon element (4). The specifications describe it as a holding or locking means to retain the bar in operative position, and to prevent its displacement or accidental throwing back to nonoperative position. It is said to consist preferably of a lever pivotally fulcrumed upon the top surface of the housing; and "this locking lever is conveniently arranged, so that it may be manipulated to release the operating bar and permit the latter to be

Isadore Bookstein, of Albany, N. Y. (Richard B. Cavanagh, of New York City, and Bernard F. Garvey, of Washington, D. C., of counsel), for appellant.

thrown back to the position shown in dotted lines in Fig. 3, but will, when in active position, retain said bar in effective relation to the set of contacts." Further on, in describing a modified construction in which the push buttons are fixedly attached to the operating bar, the specifications explain that, when the mechanism is located on the floor, it may be convenient, for instance, at night or when the floors are being swept, to throw back the bar with its attached push buttons, into nonoperative position, so as to prevent the accidental actuation of the alarm. It is clear, therefore, that the inventor contemplated a locking means which could be manipulated so that the mechanism could be put in nonoperable as well as operable condition.

In the defendant's device the movable hinged member is limited in its downward movement by stops, or by a wooden strip projecting out from the inner perpendicular side of the L-shaped rail. Such stops hold in operative position the movable member, which otherwise would be caused by gravity to swing too far down. Such stopping means is charged to be the equivalent of the fourth element of the claim in suit. But these stops are fixed; they cannot be manipulated to allow the movable member to be swung out of operative position. If the claim is infringed, we must treat it as covering a construction where there is no lever, pivoted and capable of being moved out of engagement, so as to allow the bar to be thrown back into an inoperative position, but merely a stop which constantly keeps the bar in operative position. The claim must be read in the light of the specifications, which plainly said that the locking means were such that the bar could be put out of operation as well as in. This was important to prevent accidental actuation of the alarm.

Moreover, the patentee abandoned more general claims, for example, claims 10 and 11, as originally filed, which contained all the elements of claim 6 except the last. These did not, it is true, contain a fixed stop to retain the bar always in operative position, but we cannot think that a mere stop was invention over what was canceled.

In the light of this file wrapper history and reading claim 6 on the specifications, as we must, its last element presupposes a mechanism which can be put out of operation, and does not cover a mere fixed stop, which retains the bar always in operable position. Hence defendant's device does not infringe.

The decree is reversed.