ELLIOTT ADDRESSING MACH. CO. et al.
v. WALLACE ADDRESSING MACH. CO.
Inc.

No. 379.

Circuit Court of Appeals, Second Circuit.

July 28, 1930.

E. Clarkson Seward, C. P. Goepel, and W. Saxton Seward, all of New York City, for appellant.

B. W. B. Brown, of New York City (William Nevarre Cromwell and S. Michael Pineles, both of Chicago, Ill., of counsel), for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff Elliott is the exclusive licensee for addressing machine use of Fuller patent, No. 1,101,268, owned by the plaintiff A. B. Dick Company. This patent is for a stencil sheet, and its validity has already been sustained. A. B. Dick Co. v. Underwood Typewriter Co., Inc. (D. C.) 246 F. 309, affirmed (C. C. A.) 252 F. 990 and A. B. Dick Co. v. Barnett (D. C.) 287 F. 573, affirmed (C. C. A.) 288 F. 799. The issue in this suit is confined to infringement.

The stencil sheet of this patent is made by coating "an open lace-like material" such as Japanese Yoshino paper, which seems to be ideal for this purpose, 'with a solution which will be at once soft and plastic enough, when slightly moistened, to be displaced by typewriter keys, and sufficiently hard to withstand the pressure of the ink roller used in reproduction as well as to undergo changes in temperature to be encountered in use anywhere without becoming sticky. Yet this result is obtained without having the coating so hard and brittle that it will soon crack and be spoiled in use. Of the claims relied on which are 1, 3, 13, 14, 15, 16, 23, and 24, Nos. 1, 2, and 24 are typical and are as follows:

"1. A stencil blank capable of being stencilized, consisting of a dry but hygroscopic sheet of fibrous material impregnated with a coagulated colloidal substance, substantially as described.

"2. A stencil blank capable of being stencilized, consisting of a dry but hygroscopic sheet of fibrous material impregnated with a coagulated colloidal substance and a tempering agent, substantially as described."

"24. A stencil blank capable of being stencilized by pressure, consisting of a fibrous sheet impregnated with protein treated with a mineral coagulant and a tempering agent, substantially as described."

As will be seen more in detail from the opinions in the cases above mentioned, the preferred coating of Fuller was made from a colloidal substance, such as gelatin, white sugar, placial acetic acid, glycerin, and potassium dichromate. We need not now consider again the proportions or method of mixture.

The defendant makes its stencil sheet similar in appearance to that of the patent, and with all of its characteristics in practical use as a stencil, although it will not meet all of the tests, other than those of practical use, to which the Fuller stencil may be subjected without harm. Perhaps the outstanding difference revealed by such tests is that the Fuller stencil is insoluble in water hot or cold while the defendant's stencil will dissolve in hot water at or over 120 degrees F. But for present purposes the two stencils may be taken to be of equal practical utility and infringement depends upon whether the defendant has obtained its result in the Fuller way. This in turn depends upon what is meant by "coagulated" and more specifically upon whether ammonia alum is a coagulant.

While Fuller discloses potassium dichromate as the preferred coagulating agent, he does not limit the patent to that, but does by its use get the irreversible coagulation, however, which makes his stencil insoluble. The defendant uses ammonia alum with no chromium at all and gets what it claims is not

coagulation but a somewhat lesser hardening. This may prove to be a mere verbal distinction when the case is tried, but we are not prepared to accept that view on affidavits alone. The Fuller patent was held infringed in A. B. Dick Co. v. Barnett, supra (see page 579 of 287 F.) because Barnett used chromium. The suggestion in that opinion that alum may be used without infringement, while not controlling in this suit, serves to emphasize the important part chromium plays in Fuller and the effect its absence in the defendant's coating may have on infringement.

The English Zuccato patent discussed in the last-mentioned case discloses the use of alum, and, while Zuccato required perforating or cutting the stencil and obtained a very different product from either the plaintiffs' or the defendant's, it is not unreasonable to believe that present day advances in chemical knowledge may permit the informed to produce the defendant's stencil with the Zuccato disclosure, now open to all, and without using anything excluded by Fuller. This idea may be erroneous, but it is the basis of serious dispute between these parties and is too well supported by the defendant to permit infringement to be taken beyond question before trial on the merits. It is well established that without clear infringement there should be no injunction pendente lite. Simson Bros. v. Blancard & Co. (C. C. A.) 22 F.(2d) 498; Cutter Co. v. Metropolitan Electric Mfg. Co. (C. C. A.) 275 F. 158; Hall Signal Co. v. General Railway Signal Co. (C. C. A.) 153 F. 907. Moreover, the doubt as to infringement is somewhat enhanced by the fact that, before the plaintiff Elliott was licensed under the Fuller patent, it strenuously maintained in a letter to this defendant dated March 14, 1922, that it was making stencils "absolutely keeping the Zuccato disclosure," using potash alum to set the gelatin, and saying further that "our paper is very soluble in hot water but not enough soluble in cold water to make it at all inferior to the Belknap or A. B. Dick products. We wouldn't change our formula and use a coagulant in place of the potash alum even though the courts told us we could do so." Again on June 19, 1922, it wrote the defendant as follows:

"We have your letter of June 16th and I remember that when the Fuller patents were first issued we tried making stencil paper following the disclosure in patent #1,101,268 but we got no results whatever and we couldn't understand at the time how anyone could get results following that patent.

"At that time we were making stencils of the Zuccato disclosure and we did not in any way change our formula."

If these letters are taken to indicate that a good stencil not inferior to that of Fuller can now be made solely on the Zuccato disclosure, and the plaintiff who wrote them can now hardly expect less than to be required to prove why not, justice requires that this defendant be unrestrained until given an adequate opportunity by trial on the merits to have its claim, that it makes its stencil the same way without infringement of the patent in suit, fully litigated.

Decree reversed, and preliminary injunction denied.