PENMAC CORPORATION et al. v. FALCON PENCIL CORPORATION.

District Court, S. D. New York.
July 25, 1939.

Frederic P. Warfield, of New York City, for plaintiffs.

Charles Ress, of New York City, for defendant. .

LEIBELL, District Judge.

This is a motion for a preliminary injunction to restrain infringement of eight United States Letters Patent owned by the plaintiff, Penmac Corporation. The Wahl Company, exclusive licensee under the patents in suit, joins as a party plaintiff in the application and prayer for relief.

The complaint alleges the infringement by the defendant corporation of all eight patents mentioned therein but the affidavits, briefs and oral argument in support of and in opposition to the motion have been confined to a discussion of but two of the patents, namely, United States Patents Nos. 1,866,072 and 1,928,042, and more particularly have been limited to the following claims of each: 24, 26 and 29 of United States Patent #1,866,072 and 10 of United States Patent #1,928,042. These claims read as follows:

United States Patent #1,866,072:

"24. In a magazine lead pencil including a casing, the combination of means providing a magazine chamber in the upper portion of the pencil, means for guiding a lead from said chamber to the lower end of the pencil, longitudinally movable lead-propelling mechanism including a lead-gripping jaw and a camming member positioned beneath said magazine, a spring acting on said camming member to force said mechanism in one direction, and means operable from the outside of the casing for moving said mechanism in opposition to said spring."

"26. In a magazine lead pencil including a casing, a lead guide-tube, releasable lead-gripping means, and operating mechanism including a longitudinally movable gripper-operating element slidable on said guide-tube, a spring tending to oppose the movement of said gripper-operating element in one direction, and means including an exteriorly accessible element for moving said operating element in opposition to said spring."

"29. In a magazine pencil including a casing, the combination of means including a lead magazine in the upper end of the pencil, a slotted lead guide-tube for conducting leads downwardly from said magazine, lead-propelling means including longitudinally movable releasable lead-gripping means extending through the slotted portions of said guide tube, and operating mechanism including a spring tending to oppose movement of said gripping means in one direction, and means including an exteriorly accessible element for moving said gripping means in opposition to said spring."

United States Patent #1,928,942:

"10. In a step-by-step pencil including a casing, a longitudinally-movable lead-gripping unit including a plurality of outwardly spring-pressed jaws, a longitudinally-movable spring-pressed operating member tending to thrust said jaws toward each other and against a lead in the pencil in opposition to their springs, and exteriorly accessible means for moving said operating member in opposition to its spring."

This limiting of the issues for the purposes of this motion is attributable to the fact that these patents have recently been the subject of litigation in this court and the validity of the above mentioned claims thereof, among others, has already been adjudicated. Penmac Corporation v. Esterbrook Steel Pen Mfg. Co., D.C., 27 F.Supp. 86. The question confronting the court on this application for a preliminary injunction is, under the circumstances, one of infringement only. Steinfur Patents Corp. v. Philip Singer & Bro., D.C., 44 F. 2d 226; General Electric Co. v. P. R. Mallory & Co., D.C., 286 F. 175, 177; Fireball Gas Tank & Illuminating Co. v. Commercial Acetylene Co., 8 Cir., 198 F. 650. If no real issue on this score is presented and if the infringement is clearly shown, authority requires the granting of the application. The rule as stated in Elliott Addressing Mach. Co. v. Wallace Addressing Mach. Co., 2 Cir., 43 F.2d 949, 950, is: "It is well established that without clear infringement there should be no injunction pendente lite. Simson Bros. v. Blancard & Co. (C.C.A.) [2 Cir.] 22 F. 2d 498; Cutter Co. v. Metropolitan Electric Mfg. Co. (C.C.A.) [2 Cir.] 275 F. 158; Hall Signal Co. v. General Railway Signal Co. (C.C.A.) [2 Cir.] 153 F. 907."

Before proceeding, however, to the only issue before me it would be well to com-

ment briefly on some of the facts leading up to the present application.

As evidenced by the above mentioned claims, the patents owned by the plaintiff, Penmac Corporation, relate to a mechanical pencil. Patents Nos. 1,866,072 and 1,-928,042 specifically cover a "Magazine Lead Pencil". The Wahl Company, exclusive licensee under said patents, first put the magazine pencil upon the market in August, 1936, under the familiar trade name "Eversharp". Since that time said licensee has manufactured and sold about 1,250,000 of these pencils throughout the world, except Germany, Russia and Japan. The commercial value of the device has been definitely established. In developing the magazine pencil and placing the same upon the market The Wahl Company has expended, since the license under these patents was acquired, a sum of $500,000. Its product has sold at retail from $1.50 upwards, and recently said company has introduced a model which retails for $1.

Judge Woolsey in the Esterbrook case, supra, described the construction of plaintiff Penmac Corporation's pencil as disclosed by the patents as follows [27 F. Supp. 91]:

"The construction of each of the pencils disclosed by these patents [five in number] may, perhaps, be adequately described by saying that, commencing at the outside, it consists—

"1. Of an outer casing of appropriate length for writing, tapered at the writing end;

"2. Of the mechanism by which the lead is fed to the writing point—a system of grippers and camming members;

"3. Of means for manipulating this mechanism from the outside—by a slide or by a trigger, or by elongating the pencil case by pulling at its end, or shortening it by pressing thereon;

"4. Of a spring or springs to ensure return of the interior mechanism to its writing position; and

"5. Of a guide tube for the lead, so slotted as to enable the grippers when actuated by the camming member so to reach and seize the lead that its propulsion through the guide tube towards the writing end of the pencil for a predetermined distance may be achieved.

"The special objective of these patents lies in this feeding process by which the lead is propelled through the lead guide-tube for a short distance towards the writing end of the pencil.

"It seems to me that it matters not by what manipulation the mechanism devised to achieve this objective is actuated. It is the mechanism within the pencil casing which counts, and it is necessary that there should be a properly timed interaction between the camming element and grippers which seize and hold the lead.

"In the mechanism, consisting of those elements, lies, to my mind, the invention disclosed in such of the claims of these patents as I have sustained."

The defendant corporation was organized in May, 1938, and since that time has caused mechanical pencils similar in design and appearance to those of the plaintiffs to be manufactured and sold in considerable quantity and at a substantially lower retail price. Defendant's pencils retail at 79¢ and 49¢ each. The two infringing pencils of defendant are referred to as the "Liggett" and the "Macy" pencils. Defendant states that it is not now manufacturing the "Macy" pencil—that it discontinued its manufacture some time ago.

Plaintiffs contend that defendant's pencils not only approximate those of their manufacture in appearance and design but are very similar in construction and operating principle and consequently infringe upon the adjudicated claims hereinabove set out. Plaintiffs further contend that defendant's pencil is inferior in quality and workmanship to that of The Wahl Company's manufacture and that the sale of such inferior product results in a double injury to the plaintiffs, to wit:—the loss of an important section of the plaintiff Wahl Company's market and an unfavorable public opinion of repeating pencils in general.

In support of their claim of infringement the plaintiffs have submitted one of their pencils (which was before the Court in the Esterbrook case) and two of defendant's as physical exhibits and also elaborately detailed colored drawings showing the internal operation of the pencils involved and the points of similarity in operating principle and construction. I have carefully examined the models and studied each detail of operation as outlined in the drawings and described in the affidavits and from such study I am convinced that the defendant reaches precisely the same result as the plaintiffs and

in a manner not differing in principle in any material respect. While there are some inconsequential mechanical differences in the construction of the two pencils, concerning which it would serve no useful purpose to go into detail, defendant's pencils do contain practically all of the elements which constitute the invention set out in claims 24, 26 and 29 of United States Patent No. 1,866,072 and claim 10 of United States Patent No. 1,928,042, as stressed by Judge Woolsey, from whose opinion I quote the following:

"This gives good objective proof of the inventive quality involved in the plaintiff's first two patents, which contained the essential parts of its disclosed devices, namely, the camming member co-acting with gripper jaws which propelled the pencil through the lead guide-tube towards and out of the writing point of the pencil casing.

"Indeed I think that the patents, Woelm No. 1 and Woelm No. 2, may fairly be called pioneer patents in the magazine pencil art."

There is no doubt in my mind that the grippers in defendant's pencils have precisely the same fundamental function as those in the pencil manufactured and sold by the plaintiff Wahl Company, namely, the propulsion of the lead through the lead guide-tube and while the mechanism employed in defendant's models may be more elaborate it performs the same basic function as the mechanism employed by the plaintiffs. Each has a camming member co-acting with gripper jaws, the operation being accomplished in part by a spring force acting on the camming member either directly or indirectly through another part. Both pencils are composed of practically the same internal parts, varying only in small details of construction,—grippers and camming members, means for manipulating the mechanism from the outside, springs to insure the return of the mechanism to writing position, guide-tubes for the lead, etc. It

matters little whether the lead is held firm by the grippers when the pencil is in writing position or whether the lead is held firm by some other means. The jaws of the grippers propel the lead. The special objective of the construction and internal arrangement of the mechanical parts in each pencil is the propulsion of lead through the guide tube for a short but definite distance and out of the writing end. No substantial difference in the manner in which this objective is reached is to be found in any of the models before me. As Judge Woolsey stated in the Esterbrook case—"I do not think it makes the slightest difference by what manipulation the movement of the different interior parts of the pencil are made to co-act with each other, or the order of such co-action, because the objective is to propel the lead a certain prearranged distance through the lead guide-tube towards or out of the writing point."

I therefore hold that the defendant has infringed upon claims 24, 26 and 29 of the United States Patent No. 1,866,072 and claim 10 of United States Patent No. 1,928,042.

Plaintiff's motion for a preliminary injunction is granted.

Pursuant to Rule 65 (c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, I direct that the plaintiffs, as a condition of the issuance of the preliminary injunction herein, shall give security in the total sum of ten thousand dollars ($10,000) for the payment of such costs and damages as may be incurred or suffered by the defendant, if found to have been wrongfully enjoined. The bond or undertaking shall be submitted for the approval of the Court on one day's notice to the defendant.

Settle order on one day's notice; and in preparing the order counsel will follow the directions contained in Rule 65 (d) of the Federal Rules of Civil Procedure. The bond and order should be submitted by noon of July 28th.