## PENMAC CORPORATION v. ESTER-BROOK STEEL PEN MFG. CO.

### No. 140.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1940.

Frederic P. Warfield, of New York City, for plaintiff-appellee.

Charles H. Howson, of New York City (Howson & Howson and Hubert Howson, all of New York City, on the brief), for defendant-appellant.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This action for the usual injunction and accounting for patent infringement was originally brought upon nine patents for mechanical pencils. Four were eliminated voluntarily from the action before trial. The District Court sustained the claims as to two and held the other three invalid. Defendant's appeal therefore concerns only the two patents upheld, Nos. 1,866,072 and 1,928,042, issued to Alfred Woelm (Woelm No. 1 and No. 2). The detailed claims as to each—Claims Nos. 1, 2, 24-26, 28-30, 36, and 37 of No. 1, and 6, 7, 10, 12, and 13 as to No. 2—are quoted in the opinion below, D.C., 27 F.Supp. 86, 87-90. On the basis of this decision these patents were also upheld in Penmac Corp. v. Falcon Pencil Corp., D.C.S.D.N.Y., 28 F.Supp. 639. Plaintiff takes title to the patents by assignment and has in turn granted a license to the Wahl Company, makers of the well-known Eversharp pencil. Defendant is a long established pen and pencil manufacturing company having licenses under various patents discussed below and in the argument here.

For over fifty years, we are told, the great need in the mechanical pencil field has been for a pencil that would combine the features of a "magazine" pencil—one which automatically feeds a new lead into the barrel when the old one is exhausted—with the features of a "step-by-step" pencil—"one in which an intermittent actuation by the thumb or fingers produces a progressive step-by-step feeding of the lead." Plaintiff's two Woelm patents are supposed to have met these requirements, and were regarded by the District Court as the "pioneer patents in the magazine pencil art."

The two Woelm patents were applied for as one and were split in the United States Patent Office. Woelm No. 2 is only a slight refinement on No. 1, and for the purposes of this appeal, the two patents should be considered together. As we understand the first Woelm patent, it perfects the "step-by-step" feeding process in the following manner: In normal writing position, the lead is secured in place by a gripper which clutches the lead about an inch above the writing point. This gripper, located within the barrel, has an extension arm protruding outside the barrel. By pressure of the thumb against the extension arm, the gripper's hold on the lead is released. The extending arm is then pushed by the thumb up along the barrel in a groove made for the purpose, and as the arm moves upward, it carries the gripper, which has relinquished contact with the

lead, along with it. The pressure of the thumb on the extending arm is then released; the gripper again clutches the lead at this higher point. A spring then forces the extending arm and gripper back down to their original position, and the pressure of the gripper on the lead carries the lead down with it. Since the gripper seizes the lead at a higher point and then returns to its normal position, bringing the lead with it, the lead is propelled forward at the writing tip. The second Woelm patent presented the refinement of double grippers released by a spring when the operating lever is pushed upward, thus eliminating the initial movement inward of the lever before its retraction, as required under the first patent.

The "step-by-step" process in defendant's pencil operates as follows: In writing position, pressure is exerted against the lead at two places—at the writing point by a "collet" (an extension of the guide-tube below the barrel), and within the barrel by two complementary grippers. The mechanism is not operated by an arm extending beyond the barrel, but instead by pressure of the thumb on the top of the barrel. When the top of the barrel is depressed, the hold of the grippers on the lead is released, and at this point the only pressure on the lead is that exerted by the collet at the writing tip. Depressing the top of the barrel forces downward the entire metal guide-tube enclosing the lead. The collet forms the lower end of this same guide-tube, and the "friction ring" created by the pressure of the collet on the lead compels the lead to move downward as the guide-tube moves downward. When the guide-tube has moved downward a fixed distance, and reaches its lowest point in relation to the barrel, the pressure of the thumb on the top of the barrel is released. This causes the grippers to reëngage the lead at a higher point on the lead column. A system of springs forces the guide-tube back into its original place in the barrel. The lead, however, does not move back with the guide-tube, for the pressure of the grippers holds the lead in its lowest position. The lead has thus moved forward the designated distance out of the barrel, and protrudes from the tip of the pencil in writing position.

It will thus be seen that here we have two step-by-step feed mechanisms reaching the same end by somewhat different processes. All the pencils aim at a method of propulsion of the lead towards and out of the writing tip of the pencil. And the method is generally the same; grippers clutch the lead, release it, and clutch it again at a higher point on the lead column. But under the plaintiff's design the gripper moves upward along the stationary lead, then grips the lead higher up, and pushes it down to the proper position; while in the defendant's pencil the gripper remains stationary while the guide-tube and lead move downward and then grips and holds the lead at a lower point in the lead column while springs force the guide-tube back. The District Court held this difference not fundamental and concluded that within the barrel the basic mechanism for propelling the lead was the same.

Before turning to the issue of infringement, however, we must consider the validity of plaintiff's patent, and whether, as the District Court believed, the Woelm patents are the pioneer patents in the magazine pencil art. In this inquiry, we shall assume, as plaintiff insists, that the basic invention is the method of propelling the lead.

Two patents in the prior art seem to have anticipated much of Woelm's work. The Hasselquist patent, No. 1,906,851, also has gripping fingers which are released from contact with the lead, reëngage the lead at a higher point in the lead column, and then carry the lead down into writing position. Hasselquist, however, manipulated his mechanism by revolving the tip of the pencil first in one direction and then in another, while Woelm, as we have seen, relied upon pressure with the thumb upon the protruding lever to initiate the movement, and the force of a spring to conclude it. Plaintiff claims that, since this patent was co-pending in the Patent Office with the Woelm patents, though application for it antedated the Woelm application by six months, it must be "dropped from the case" if it does not show actual conflict with the plaintiff's patents, for it cannot be used to show prior invention, since it does not show actual first conception of the idea. We think this argument is an attempt to draw too general and extensive a conclusion from a passing and there apt reference in Stelos Co. v. Hosiery Motor-Mend Corp., 2 Cir., 72 F.2d 405, affirmed 295 U.S. 237, 55 S.Ct. 746, 79 L.Ed. 1414, a conclusion seemingly against the general trend of view; for the clear-cut holding of Lemley v. Dobson-Evans Co., 6 Cir., 243 F. 391,

was approved in Milburn Co. v. Davis, etc., Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651, in reversing 2 Cir., 1 F.2d 227. Compare also Denaro v. Maryland Baking Co., 4 Cir., 50 F.2d 1074, affirming D.C.Md., 40 F.2d 513; Ottinger v. Ferro Stamping & Mfg. Co., 6 Cir., 59 F.2d 640, 643; and Minnesota Mining & Mfg. Co. v. Coe, 69 App.D.C. 256, 100 F.2d 429, certiorari denied 306 U.S. 662, 59 S.Ct. 788, 83 L.Ed. 1059, noted in 8 Geo. Wash. L. Rev. 216, 7 ibid. 425. The point was not discussed in Hazeltine Corp. v. Abrams, 2 Cir., 79 F.2d 329. But we need not explore this issue further, for the point is narrow at most, and for the purposes of our decision here we need merely call attention to the similarity of the two mechanisms.

[2] Moreover, the defendant relies on other prior patents, of which perhaps the most important is the Hacker patent, No. 294,317, of 1884, the earliest of the patents principally relied on by the defendant. Hacker had a similar mechanism by which grippers clutch, disengage, and reclutch the lead; he, however, manipulated his pencil by using the thumb to depress the top of the barrel cap, just as the defendant does. In this respect Hacker differed from Woelm, who used a lever arm protruding from the barrel. This, we believe, is the only distinction between the Hacker and Woelm patents which is at all tenable. And if this one difference is sufficient to validate plaintiff's patent despite Hacker's prior art, plaintiff must relinquish its claim that defendant has infringed. Defendant's method of manipulation is Hacker's: to depress the top of the barrel cap. Hence if Hacker's patent is sufficiently unlike plaintiff's patents so that the latter are valid, defendant's pencil is sufficiently unlike plaintiff's design to be non-infringing. Plaintiff finds itself in the dilemma—not unusual for patentees—of having to treat its claims narrowly to avoid the defense of prior art and broadly to sustain the claim of infringement. For the purposes of this action we may content ourselves with assuming the validity of plaintiff's patents to reach a conclusion that defendant does not infringe them. Duplex Electric Co. v. Padua Holdup Alarm Corp., 2 Cir., 30 F.2d 344.

Up to this point we have referred only to the step-by-step feeding process, and have ignored the "magazine" feature of Woelm's pencil. We do not believe the "magazine" to be of any importance, for Hasselquist had an identical magazine in his patent and the earlier Smith patent, No. 1,262,859, of 1918, also was for a magazine pencil. Nor is Woelm entitled to any credit for combining the magazine and the step-by-step features. Hasselquist, again, had done the same thing. That Hasselquist's step-by-step mechanism did not resemble Woelm's so much as Woelm's resembled Hacker's is, of course, unimportant.

We think, therefore, with the defendant that a reading of the plaintiff's claims themselves in the light of this prior art shows they cannot be applicable to the defendant's pencil. The several claims under the plaintiff's patents emphasize the special mechanism embodied in its design. Thus, Claim 2 of Woelm No. 1, cited to us as a fair sample and seemingly one of the broader and clearer claims, is as follows: "In a magazine pencil, the combination of a cylindrical holder with conical mouth piece, a compartment in said holder for containing strips of lead, a guide tube for leading said lead strips to said mouth piece, a gripping device reciprocable in said holder and adapted to grip and feed forward a lead when moved downward, and to release its grip thereon when moved upward, and a spring normally causing said device to hold a lead in said guide tube." The intent to describe a particular operation of the gripping device to feed the lead forward is manifest.

In view of the fact that the Woelm patents represent only limited improvements over the known prior art, they must be narrowly construed, Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U.S. 285, 294, 37 S.Ct. 502, 61 L.Ed. 1136; Duplex Electric Co. v. Padua Holdup Alarm Corp., supra; Gillette Safety Razor Co. v. Cliff Weil Cigar Co., 4 Cir., 107 F.2d 105, and the Patent Office showed by granting an independent patent to defendant's device that it considered there were features distinguishing it from the Woelm design. Cf. Boyd v. Janesville Hay-Tool Co., 158 U.S. 260, 263, 15 S.Ct. 837, 39 L.Ed. 973; Reis v. Rosenfeld, 2 Cir., 204 F. 282. When the Woelm claims are thus read, the defendant's pencil does not infringe them.

Plaintiff also claims that Woelm's patent was the first to obtain any commercial success. To support this contention, it points to the Wahl Eversharp pencil, produced by the Wahl Company under a license from plaintiff. The Wahl Eversharp pencil is admittedly the most successful mechanical

698

pencil in the field. But upon examination it appears to bear less resemblance to Woelm's design than to others before us. It is manipulated by depressing the top of the barrel cap (the method of defendant and Hacker), not by Woelm's device of a lever arm protruding from the barrel. Moreover, Woelm's patents were applied for in 1922, and the Eversharp in question was not produced commercially until 1936, and is the subject of a separate patent taken out in 1936. The commercial success of the Eversharp does not cast any particular credit upon Woelm, and the fact that Eversharp's manufacturer has taken a license from plaintiff may indicate no more than healthy business precaution.

Reversed, with directions to dismiss the complaint.